ELLEN F. ROSENBLUM
Attorney General
MARC ABRAMS  #890149
Assistant Attorney-in-Charge
BRIAN SIMMONDS MARSHALL #196129
Senior Assistant Attorney General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  marc.abrams@doj.state.or.us
       brian.s.marshall@doj.state.or.us

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| HORIZON CHRISTIAN SCHOOL, an Oregon nonprofit corporation; MCMINNVILLE CHRISTIAN ACADEMY, an Oregon nonprofit corporation; and LIFE CHRISTIAN SCHOOL, an assumed business name, | Case No.  3:20-CV-01345 |
| | **GOVERNOR BROWN'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |
|         Plaintiffs, | |
|    v. | |
| KATE BROWN, GOVERNOR OF THE STATE OF OREGON, in her official capacity only, | |
|         Defendant. | |

# TABLE OF CONTENTS

**MEMORANDUM OF LAW** ..................................................................................... **1**

**INTRODUCTION** ................................................................................................... **1**

**FACTS** .................................................................................................................. **4**

> **STANDARDS ON REVIEW FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTAINING ORDER** ................................................... **10**

**ARGUMENT** ........................................................................................................ **11**

> I.  Plaintiffs' freedom of religion has not been violated (First Claim for Relief). ............ 12

>> A.  Courts have consistently rejected Free Exercise challenges to emergency orders. ....................................................................... 12

>> B.  The Emergency Orders are proper regulations that do not target religious observance ................................................................ 14

>>> 1.  The Executive Order should not be subject to "strict scrutiny." .......... 15

>>> 2.  The Executive Order satisfies the "rational relationship test. ............. 19

>>> 3.  Even under an application of "strict scrutiny," the Executive Order survives ................................................................ 21

> II.  The Governor's Executive Orders comport with the Oregon Constitution's Freedom of Religion Clauses (Second Claim for Relief). ................................. 23

> III.  The Governor's Executive Orders are consistent with plaintiffs' First Amendment speech and assembly rights (Third through Sixth Claims for Relief). ................................................................................................ 24

> VI.  Plaintiffs do not have a viable claim for a substantive due process violation (Seventh Claim for Relief) ................................................................. 27

> V.  Plaintiffs fail to carry their burden for injunctive relief of any type. ......................... 29

>> A.  Plaintiffs are not likely to succeed on the merits of their claim ..................... 29

>> B.  There is no irreparable injury to plaintiffs, who have been limited in their operations but never closed. ............................................. 30

>> C.  The balance of equities — potential loss of life — favors the Governor ........ 31

>> D.  There is a strong public interest in maintaining the *status quo.* ..................... 32

**CONCLUSION** .................................................................................................... **37**

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## TABLE OF AUTHORITIES

**Cases**

*In re Abbott*, 594 F.3d 772, 784 (5th Cir. 2020) ..................................................... 15, 30

*Abiding Place Ministries v. Wooten*, (S.D. Cal. Apr. 10, 2020) ................................. 13

*Albright v. Oliver,* 510 U.S. 266, (1994) ................................................................... 28

*Amato v. Elicker*, 2020 WL 2542788, 811, (D. Conn. May 19, 2020) ........................ 25

*Antietam Battlefield KOA v. Hogan,* 2020 WL 2556496, (D. Md. May 20, 2020). ... 12, 13, 17, 25,

*Ass'n of Jewish Camp Operators v. Cuomo*, (N.D.N.Y. July 6, 2020) ....................... 12

*Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, (1991) ................................................... 25

*Benson v. Walker*, 274 F. 622 (4th Cir. 1921) ......................................................... 30

*Berger v. City of Seattle*, 569 F.3d 1029, (9th Cir. 2009)......................................... 25

*Binford v. Sununu*, (N.H. Super. Ct. Mar. 25, 2020) .................................................. 14

*Boos v. Barry*, 485 U.S. 312, (1988)......................................................................... 22

*Calvary Chapel Dayton Valley v. Sisolak*, No. 19A1070, 2020 WL 4251360 (U.S. July
  24, 2020). ........................................................................ 3, 12, 15, 17, 23, 31

*Calvary Chapel of Bangor v. Mills*, (D. Me. May 9, 2020).................................... 13, 16

*Cassell v. Snyders*, (N.D. Ill. May 3, 2020) ............................................................. 13

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, (1993)...................... 18

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, (1985).................................. 19

*Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, (1984)................................ 22

*Compagnie Francaise de Navigation a Vapeur v. Bd. of Health of State of La.*, 186 U.S.
  380 (1902)........................................................................................................ 30

*Cross Culture Christian Ctr. v. Newsom*, (E.D. Cal. May 5, 2020) ............................ 13

*Crowl v. Inslee*, (W.D. Wash. May 8, 2020) ............................................................ 13

*Ctr. for Fair Pub. Policy v. Maricopa County, Arizona,* 336 F.3d 1153, (9th Cir. 2003) ............ 27

*E.g., Porter v. Osborne*, 546 F.3d 1131 (9th Cir. 2008) ........................................... 29

*Elim Romanian Pentecostal Church v. Pritzker*, (N.D. Ill. May 13, 2020)................... 13

*Elkhorn Baptist Church v. Brown*, 366 Or. 506 (2020)......................................... 14, 33

Page ii

*Employment Div., Dep't of Human Res. v. Rogue Valley Youth for Christ*, 307 Or. 490, 497-99 (1989) ............................................................................................................ 24

*Employment Div., Dept. of Human Res. v. Smi*th, 494 U.S. 872, (1990)...................................... 16

*Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, (1985) ............................ 1

*Gary v. City of Warner Robins*, 311 F.3d 1334 (11th Cir. 2002) ................................................. 19

*Gish v. Newsom*, (C.D. Cal. Apr. 23, 2020)......................................................................... 13, 18

*Hartman v. Acton*, 2020 WL 1932896 (S.D. Ohio Apr. 21, 2020).............................................. 28

*Hickox v. Christie*, 205 F. Supp. 3d 579 (D. N.J. 2016) ............................................................. 30

*Hight Plains Harvest Church v. Polis*, (D. Colo. Aug. 10, 2020) ......................................... 12, 13

*Hotze v. Hidalgo,* (Tex. Dist. Ct. Apr. 13, 2020)........................................................................ 14

*Jacobson v. Massachusetts*, 197 U.S. 11, (1905)..................................................... 1, 11, 16, 30

*Legacy Church, Inc. v. Kunkel*, (D.N.M. July 13, 2020) ....................................................... 13, 17

*Lighthouse Fellowship Church v. Northam*, (E.D. Va. May 1, 2020) .......................................... 13

*Marshall v. United States*, 414 U.S. 417, (1974)......................................................................... 1

*Marysville Baptist Church v. Beshear*, (6th Cir. May 2, 2020) ................................................... 15

*Menotti v. City of Seattle*, 409 F.3d 1113, (9th Cir. 2005)................................................... 26, 27

*Michael H. v. Gerald D.,* 491 U.S. 110, (1989) ......................................................................... 28

*Murphy v. Lamont*, (D. Conn. Aug. 3, 2020)............................................................................. 12

*Nunez v. City of Los Angeles*, 147 F.3d 867, (9th Cir. 1998) ..................................................... 28

*On Fire Christian Cntr., Inc. v. Fischer¸* (W.D. Ky. Apr. 11, 2020) ........................................... 14

*Our Lady of Sorrows Church v. Mohammad*, (D. Conn. May 18, 2020) ..................................... 13

*Pierce v. Society of Sisters*, 268 U.S. 510 (1925) ...................................................................... 28

*Prince v. Massachusetts*, 321 U.S. 158, (1944) ................................................................... 29, 33

*Rasmussen v. Idaho*, 181 U.S. 198 (1901)................................................................................ 33

*Reed v. Town of Gilbert*, 576 U.S. 155 (2015) .......................................................................... 25

*Reno v. Flores,* 507 U.S. 292, (1993) ....................................................................................... 30

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, (1980)................................................. 28

*Roberts v. Neace*, (E.D. Ky. May 4, 2020), .......................................................................... 13, 20

Page iii

*Rochin v. California*, 342 U.S. 165 (1952) ................................................................ 29

*Roe v.Wade*, 410 U.S. 113 (1973)............................................................................. 22

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.* 547 U.S. 47, (2006).................... 25

*South Bay United Pentecostal Church v. Newsom*, 140 S.Ct. 1613, (May 29, 2020)1, 3, 11, 12, 15

.................................................................................................... , 20, 23, 30

*Spell v. Edwards*, 962 F.3d 175 (5th Cir. 2020) ........................................................ 13

*Stanley v. Univ. of S. Calif.*, 13 F.3d 1313, (9th Cir. 1994) ......................................... 11

*Stormans, Inc. v. Wiesman,* 794 F.3d 1064, (9th Cir. 2015) ............................................ 19

*Tabernacle Baptist Church v. Beshear*, (E.D. Ky. May 8, 2020).......................................... 15

*Thomas v. Collins*, 323 U.S. 516, (1945)............................................................... 24

*United States v. Lee*, 455 U.S. 252 (1982).............................................................. 16

*Ward v. Rock Against Racism*, 491 U.S. 781, (1989) ................................................. 22, 25

*Westlands Water Dist. v. Natural Res. Def. Council*, 43 F.3d 457, (9th Cir. 1994). .................... 11

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, (2008) ........................................... 11

*Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595 (6th Cir. 2006)...................................... 28

*Yakus v. United States,* 321 U.S. 414, (1944) ........................................................... 11

**Statutes**

ORS 401.165............................................................................................. 4

**Rules**

Fed. R. Evid. 201(b)..................................................................................... 4

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

As Chief Justice John Roberts aptly explained recently in a concurring opinion,

Our Constitution principally entrusts "[t]he safety and health of the people" to the politically accountable officials of the States "to guard and protect." *Jacobson v. Massachusetts*, 197 U.S. 11, 38 (1905). When those officials "undertake [ ] to act in areas fraught with medical and scientific uncertainties," their latitude must be especially broad." *Marshall v. United States*, 414 U.S. 417, 427 (1974). Where those broad limits are not exceeded, they should not be subject to second-guessing by an "unelected federal judiciary," which lacks the background, competence and expertise to assess public health and is not accountable to the people. *See Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 545 (1985).

*South Bay United Pentecostal Church v. Newsom*, 140 S.Ct. 1613, 1613 (May 29, 2020)

(Roberts, C.J., concurring).

## MEMORANDUM OF LAW

## INTRODUCTION

Viruses do not discriminate between students gathering in public schools and those in private schools. Viruses do not care whether instruction is religious or secular. Neither does the Governor's Executive Order 20-29. That Order, and the guidance of the Oregon Health Authority and the Oregon Department of Education it authorizes, employ the same metrics to determine when it is safe to resume in-person classes at public schools and private schools alike.

So far in 2020, three times as many people have died from COVID-19 in the United States than Americans died in all of the Korean War or the Vietnam War, a time and half the number of fatalities in World War I. Deaths in Oregon have been tragic, but in large part because of the Governor's emergency actions, they have been *relatively* limited so far. Even so, 388 of 23,451 Oregonians confirmed to have contracted COVID-19 have already died.[1]

The Governor's Executive Orders have been effective enough that the Governor has, based on the advice of public health experts, released some of the restrictions in her early Executive Orders. Albeit with some new limitations, the stay at home orders have been relaxed, restaurants have reopened to a limited extent, and commerce has resumed in Oregon to some

---

[1] https://govstatus.egov.com/OR-OHA-COVID-19 (Last accessed August 17, 2020).

Page 1 -  **GOVERNOR BROWN'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**
MA/jh2/10383376-v1

degree.  But other gatherings such as sporting events, concerts, large civic and faith gatherings, and, yes, on-site K-12 education in most of the state—in both public and private schools—are still restricted under present conditions.

Plaintiffs demand a truly extraordinary remedy: a judicial declaration nullifying key steps the Governor has taken to protect Oregonians from a deadly disease.  They make this demand at a moment when Oregon is experiencing one of the greatest crises in its history, and at a moment when the Governor is making difficult choices to prevent mass illness and death and to keep the people of Oregon safe.   And they demand this extraordinary relief as the Governor has set specific measures to determine when to allow on-site K-12 education to resume based on statewide and local conditions around the spread of the virus.

Plaintiffs' complaint begins from two false premises. First, the Complaint assumes that the public health restrictions applicable to their private schools are rooted in the gatherings limits established in Executive Order 20-27 and its predecessors.[2]  This is incorrect.  In fact, K-12 education is governed by an entirely separate framework established by Executive Order 20-29.  Second, plaintiffs complain that their religious schooling is governed more restrictively than other comparable activities.  This, too, is false.  Executive Order 20-29 treats resumption of in-person instruction in all K-12 schools —public and private, secular and parochial— exactly the same.  Thus, the thrust of the plaintiffs' case —that Executive Order 20-29 treats their religious exercise, speech, and assembly differently than secular education— is simply untrue.  As is relevant to this case, Executive Order 20-29 applies to both "private or parochial schools" and "public schools."  The only difference is that private schools are *exempted* from certain requirements related to instructional content and other requirements of school operations not directly related to containing the spread of the virus.  These Orders are designed to keep Oregonians alive and to stop the spread of COVID-19.  And they have been working.

---

[2] Executive Order 20-27 "rescinds and replaces Executive Order 20-25" (¶ 1).  Executive Order 20-25, in turn, "rescinds and replaces certain earlier Executive Orders" (¶ 1.).

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

This is a case brought to prohibit the enforcement of an emergency order that is at the core of Oregon's fight against COVID-19. It is premised on the idea that plaintiffs —three religious schools— are unduly and unconstitutionally suppressed from engaging in the provision of faith-based education. But plaintiffs give virtually no weight to the world-wide magnitude of the crisis nor to the significant risks of health impacts and death that would be created by the immediate overturning of carefully considered orders based on the current science.

The Governor does not minimize the impact of the steps necessary to battle COVID-19, and does not dismiss the (hopefully temporary) harm to Oregon's institutions, including its private schools, that may be caused by the international, national, and state-level public health measures imposed to help curb the disease. Plaintiffs may disagree with the Governor's choice to take difficult, decisive action to curb this pandemic, which, unchecked, would have resulted in both widespread illness and death here in Oregon. But they are incorrect to say it lacks support in the framework of the United States Constitution.

Plaintiffs have not carried their heavy burden to prove they are entitled to immediate relief — relief that has been denied by the Supreme Court in similar cases. *See South Bay United Pentecostal Church*, 140 S.Ct. 1613; *Calvary Chapel Dayton Valley v. Sisolak*, No. 19A1070, 2020 WL 4251360 (U.S. July 24, 2020). Like most plaintiffs that have asserted similar claims since the start of the pandemic, these plaintiffs are not likely to prevail on any of their First Amendment claims. The Governor's content-neutral restrictions on gatherings advance a significant —even compelling— government interest. Plaintiffs have failed to demonstrate they will suffer irreparable harm before a final judgment can be entered, and the equities and public interest weigh heavily in favor of denying the motion for temporary restraining order.

Page 3 -  **GOVERNOR BROWN'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**
MA/jh2/10383376-v1

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## FACTS[3]

In mere months, the infectious coronavirus disease 2019 (COVID-19) has infected 21,549,706 people and caused the deaths of 767,158 people worldwide.[4]  In the United States alone, COVID-19 has caused the deaths of 169,926 people to date.[5]

Oregon's Governor, Kate Brown, was one of the first leaders in the nation to recognize the scope of the threat and react accordingly.  On March 8, 2020, Governor Brown declared a state of emergency pursuant to ORS 401.165.[6]  Since then, she has issued a series of Executive Orders and other actions to stop the spread of the virus, protect Oregonians from its impacts, and preserve medical capacity and equipment.

Of historical significance here, the Governor exercised her authority as Superintendent of Public Instruction to close public schools beginning March 16.[7]  On April 23, she issued Executive Order 20-20, which extended the mandatory closures to private schools as well.  Many schools, public and private, decided to close before the Governor required them to do so,[8] and other governors across the nation closed schools at the same time.[9]  In some states, where

---

[3] Defendants have cited herein to a number of documents such as the Governor's Executive Orders, and to highly respected and authoritative sources relating to the world-wide COVID-19 crisis, such as those from the World Health Organization and the tracking information from the University of Washington.  None of these citations is to material that cannot be "accurately or readily ascertained," and so defendants request the Court take judicial notice of these facts.  Fed. R. Evid. 201(b).

[4] World Health Organization, https://www.who.int/emergencies/diseases/novel-coronavirus-2019 (last accessed August 17, 2020).

[5] University of Washington Institute for Health Metrics and Evaluation, https://COVID19.healthdata.org/projections (last accessed August 17, 2020).

[6] Oregon Executive Order 20-03 at 1, https://www.oregon.gov/gov/Documents/executive_orders/eo_20-03.pdf.

[7] Declaration of Dr. Dean Sidelinger ("Sidelinger Dec."), ¶ 14.

[8] Sidelinger Dec. ¶ 14.

[9] *E.g.,* https://www.cnn.com/2020/03/23/us/us-schools-extend-closing-coronavirus/index.html; https://azgovernor.gov/governor/news/2020/03/governor-ducey-superintendent-hoffman-announce-extension-school-closures; https://www.journalgazette.net/news/local/20200403/governor-closes-schools-for-year https://governor.iowa.gov/press-release/iowa-schools-to-extend-closures-through-end-of-school-year-schools-will-continue;

Page 4 -   **GOVERNOR BROWN'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**
MA/jh2/10383376-v1

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

schools remained open until the virus had become more widespread, educators tragically contracted the virus and died.[10]

At the same time, Governor Brown exercised her emergency powers to address other activities. On March 17, Governor Brown issued Executive Order 20-07,[11] which prohibited on-premises consumption of food and drink at restaurants and taverns and prohibited gatherings of more than 25 people. On March 23, the Governor issued Executive Order 20-12, which banned non-essential social gatherings, closed certain businesses, and required social distancing.[12] For the next several weeks, the Governor continued to take action to slow the spread and blunt the economic impact of the COVID-19 virus. For example, she issued a moratorium on evictions from residential and non-residential properties due to nonpayment of rent.[13] She issued an Executive Order preventing garnishment of federal CARES Act Recovery Rebate payments so Oregonians can use those funds, as intended, to pay for essential needs.[14] And she continued the suspension of in-person instruction in primary and secondary schools as well as colleges and universities.[15] All the while, case counts continued to rise — although significantly more slowly than they otherwise would have. Sidelinger Dec. ¶ 9.

___

https://www.governor.pa.gov/newsroom/governor-wolf-extends-school-closure-for-remainder-of-academic-year/;
https://www.governor.wa.gov/news-media/inslee-extends-school-closures-rest-2019-20-school-year.

[10] https://www.npr.org/sections/coronavirus-live-updates/2020/04/14/834355560/new-york-city-reports-50-educators-lost-to-coronavirus

[11] Oregon Executive Order 20-07,
https://www.oregon.gov/gov/Documents/executive_orders/eo_20-07.pdf.

[12] Oregon Executive Order 20-12 at 2–3,
https://www.oregon.gov/gov/Documents/executive_orders/eo_20-12.pdf.

[13] Oregon Executive Order 20-13,
https://www.oregon.gov/gov/Documents/executive_orders/eo_20-13.pdf.

[14] Executive Order, 20-18, https://www.oregon.gov/gov/Documents/executive_orders/eo_20-18.pdf.

[15] Executive Order 20-20, https://www.oregon.gov/gov/Documents/executive_orders/eo_20-20.pdf; Executive Order 20-17;
https://www.oregon.gov/gov/Documents/executive_orders/eo_20-17.pdf.

Page 5 -   **GOVERNOR BROWN'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**
MA/jh2/10383376-v1

Governor Brown's current emergency actions are summarized in Executive Order 20-30,[16] which extends Oregon's state of emergency through September 4, 2020, and continues prior Executive Orders relating to education as well as other sectors of the economy. At issue in this case is Executive Order 20-29,[17] which governs public and private institutions providing K-12 education to more than 640,000 students statewide.[18]

Executive Order 20-29 applies equally to all schools for grades kindergarten through grade 12, whether public or private. *Id.* ¶ 1. The Order requires "in-person instruction may only take place if it complies with the guidance" promulgated by the Oregon Health Authority (OHA) and Oregon Department of Education (ODE) at the Governor's direction. *Id.* ¶¶ 2-3. The order also requires that "[n]ot later than August 15, 2020 … public schools and private schools must develop a written plan describing how they will comply with the guidance." *Id.* ¶ 4.

In turn, OHA and ODE have jointly issued Guidance entitled "Ready Schools, Safe Learners."[19] It outlines, among other things, the public health protocols that a school would need to implement if in-person instruction resumed. The initial release of the Guidance explained it would be updated periodically, and it has been. As the number of infections in Oregon climbed, and additional data about the virus became available, and the Guidance was revised to include clear metrics for control of the virus that must be met before in-person instruction could resume.[20] The Guidance explained that the current levels of community spread in Oregon, which

---

[16] Executive Order 20-20.

[17] Executive Order 20-29, https://www.oregon.gov/gov/Documents/executive_orders/eo_20-29.pdf.  Executive Order 20-27 (¶ 12) rescinds and replaces Executive Order 20-20.

[18] https://data.census.gov/cedsci/table?q=school%20enrollment&g=0400000US41&tid=ACSST1Y2018.S1401&hidePreview=true.

[19] "Ready Schools, Safe Learners Guidance for School Year 2020-21" (last updated Aug. 11, 2020), https://www.oregon.gov/ode/students-and-family/healthsafety/Documents/Ready%20Schools%20Safe%20Learners%202020-21%20Guidance.pdf

[20] https://www.oregon.gov/oha/PH/DISEASESCONDITIONS/DISEASESAZ/Emerging%20Respitory%20Infections/Ready-Schools-Safe-Learners-Community-COVID-19-Metrics.pdf

Page 6 -   **GOVERNOR BROWN'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**
MA/jh2/10383376-v1

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

had been relatively low at the time the initial version of the Guidance was released, had risen and was now significantly higher than those of European countries that had successfully reopened. The Guidance required reopening of schools to wait until specific measures community spread had been met.

The Guidance establishes the general rule that public and private schools may reopen for on-site instruction only after three metrics are met for three consecutive weeks: (a) five percent or less of COVID-19 tests are positive statewide, and (b) in the school's county, (i) five percent or less of COVID-19 tests are positive, and (ii) there are 10 or fewer new cases per 100,000 population. *Id.* at 19.  These measures are reliable indicators of the public health risk of reopening schools. "The prevalence of diagnosed cases of COVID-19 in a school's county is an important measure of the likelihood that on-site instruction would result in additional COVID-19 infections. The test positivity rate is an important measure of whether testing is sufficiently available that the number of diagnosed cases is a reliable measure of the prevalence of disease; that is, a high test positivity rates may suggest that there are large numbers of untested undiagnosed cases." Sidelinger Dec. ¶ 16.

For K-3 on-site instruction to resume, the Guidance requires (a) for three consecutive weeks, the school's county must have (i) positive COVID-19 tests of five-percent or less and (ii) 30 or fewer new cases per 100,000 population, and (b) no confirmed cases of COVID-19 among school staff or students in the past 14 days. *Id.* at 20.  The different standard to resume "K-3 education is based on the preliminary data showing that children 9 years and younger are less susceptible to complications from infection" and because "[y]oung children, in comparison to older children, also have greater difficulty fully engaging in distance learning."  Sidelinger Dec. ¶ 18.  The Guidance also provides other specific thresholds for rural and small districts to account for schools that draw from communities that are remote from their county's major population centers. *See id.*; OHA-ODE Guidance at 20-22.

Page 7 -   **GOVERNOR BROWN'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**
MA/jh2/10383376-v1

Currently, more than 5 percent of weekly tests statewide remain positive, so schools

generally must remain closed.[21]  However, if present conditions continue, schools in certain

counties are eligible to reopen on-site instruction for K-3 students, particularly in small rural

districts.

In adopting this Guidance at the Governor's direction, the OHA and ODE applied their

expertise in public health and education to the current conditions in Oregon. *See* Sidelinger Dec.

¶¶ 16-19. The agencies consulted the relevant data, studies, and analyses from elsewhere in

adopting guidance and the health of students, school staff, their households, and the public as a

whole in adopting thresholds for the safe reopening of schools for on-site classes. *Id.*; *see also*

OHA-ODE Guidance at 22-24.

Once those metrics are met and on-site instruction is allowed, a school must still meet

extensive public health requirements to begin in-person classes.[22]  *See* OHA-ODE Guidance at

24-55.  Consistent with paragraph 4 of Executive Order 20-29, the Guidance requires schools to

submit an Operational Blueprint demonstrating how they will meet these requirements to operate

safely.  *Id.* at 14-17.  The restrictions that apply to plaintiffs apply with equal force to *all*

elementary and secondary school institutions, whether religious or secular, private or public.

The plaintiffs in this action are three private, religious schools.  Complaint ¶¶ 18-20, 35-

37.  They have submitted no declarations[23] providing facts related to the schools' operations

under the Executive Order or how they would operate if the Court granted them the relief they

---

[21] Oregon COVID-19 County Case Rates and Test Positivity by MMWR, Week: July 5th-August 15th,
https://www.oregon.gov/oha/PH/DISEASESCONDITIONS/DISEASESAZ/Emerging%20Respitory%20Infections/Weekly-County-Metrics.pdf.

[22] The Guidance also establishes requirements regarding Equity, Instruction, Family, Community, Engagement, Mental, Social, and Emotional Health, and Staffing and Personnel (chapters 4-8), but private schools are not required to meet those requirements.

[23] Plaintiffs submitted a verified complaint, but their lawyer does not have personal knowledge of many of the alleged "facts" therein, including speculative assertions that future potential business models will fail.

Page 8 -   **GOVERNOR BROWN'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**
MA/jh2/10383376-v1

seek.  They assert they cannot conduct their programs online or otherwise under the restrictions of the Governor's Executive Orders.  Complaint ¶¶ 35-37.   They do not explain why.

Executive Order 20-30 retains several prior Orders governing other sectors, including Executive Order 20-28 regarding higher education.[25]  The OHA guidance authorized by that Order requires colleges and universities to meet numerous requirements in order to offer on-site instruction.[26]  Among other restrictions, a minimum of 35 square feet of usable classroom space per person is required.  In-person classroom instruction cannot exceed 50 individuals, except for in counties that are at Baseline or in Phase I, which cannot exceed 25 individuals. Colleges and universities are required to file a final operational plan with OHA by September 1, 2020.

Executive Order 20-30 also retains Executive Order 20-27, which, together with its implementing guidance,[27] concerns the phased reopening of gatherings and commercial activity in the State.  As of the filing of this brief, Umatilla County has, following significant local outbreaks, been returned to the "Baseline" phase of reopening, Malheur and Morrow counties have been returned to Phase I, Clackamas, Lincoln, Multnomah, and Washington counties have been unable to satisfy the metrics to move out of Phase I, and while the remaining counties are in Phase II, a number remain on a "watch list" with worrisome local outbreaks.[28]  Phase I counties are permitted to open many businesses as long as those entities adhere to physical distancing measures, caps on total occupancy, and other restrictions but significant limitations remain.

Plaintiffs repeatedly cite the limits on gatherings, but those requirements do not apply to the in-person instruction at issue in this case.  The current limits on gatherings and indoor social

---

[25] https://www.oregon.gov/gov/admin/Pages/eo_20-28.aspx.

[26] Guidance for the Conduct of In-Person Instructional, Residential, and Research Activities at Oregon Colleges and Universities (last updated July 22, 2020), https://www.oregon.gov/highered/about/Documents/News-Updates/OHA-HECC-higher-education-health-standards-covid-FINAL.pdf

[27] Oregon Health Authority, Statewide Gatherings, Indoor Social Get-Together Guidance (July 24, 2020) https://sharedsystems.dhsoha.state.or.us/DHSForms/Served/le2351g.pdf.

[28] https://govstatus.egov.com/reopening-oregon#countyStatuses.  Umatilla County is currently a Baseline county.

Page 9 -   **GOVERNOR BROWN'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**
MA/jh2/10383376-v1

get-togethers are set forth in Executive Order 20-27,[29] and as modified in the statewide gatherings guidance issued under it,[30] and vary based on the phase of reopening of each county. However, the gathering limits are "catch-all" limits, and only apply where another, more specific guidance does not.  Executive Order 20-27 clearly states these gathering limits do not apply to the school activities at issue here or to other activities for which sector-specific requirements have been established. *See* Executive Order 20-27, ¶ 3(c)[31]; *see also id.* ¶¶ 15(a), 20(a). Instead, schools are regulated under Executive Order 20-29 and its implementing guidance.

## STANDARDS ON REVIEW FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER

Fed. R. Civ. P. 65 sets out the terms for obtaining injunctive relief.  To obtain either a temporary restraining order or a preliminary injunction, plaintiffs must establish (1) that they are likely to succeed on the merits, (2) that they are likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in their favor, and (4) that an injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Such relief should be granted "sparingly and only in the most critical and exigent circumstances." *South Bay United Pentecostal Church v. Newsom*, 140 S.Ct. 1613, 1613 (May 29, 2020) (Roberts, C.J., concurring).

The interest of and effect on the public must be considered in actions implicating government policy or regulations, or other matters of public concern.  *See Yakus v. United States,*

---

[29] Executive Order 20-27, https://www.oregon.gov/gov/Documents/executive_orders/eo_20-27.pdf.

[30] https://sharedsystems.dhsoha.state.or.us/DHSForms/Served/le2351g.pdf.

[31] The limitations on gatherings set by Executive Order 20-27 "appl[y] to gatherings only, and does not apply to workplaces, banks and credit unions, gas stations, hotels or motels, shelter programs, health care facilities, pharmacies, child care facilities, schools, higher education institutions, state or local government, or other businesses or activities (e.g. retail, including grocery stores) that are subject to other directives in my Executive Orders or OHA guidance." *Id.* ¶ 3(c).

Page 10 - **GOVERNOR BROWN'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**
MA/jh2/10383376-v1

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

321 U.S. 414, 440-41 (1944) (where a preliminary injunction is requested that "will adversely affect a public interest for whose impairment, even temporarily, an injunction bond cannot compensate, the court may in the public interest withhold relief until a further determination of the rights of the parties, though the postponement may be burdensome to the plaintiff."). Even if the balance of equities tips sharply in plaintiffs' favor, "it must be shown as an irreducible minimum" that there is a fair chance of success on the merits. *Stanley v. Univ. of S. Calif.*, 13 F.3d 1313, 1319 (9th Cir. 1994) (citation omitted). Further, where the public interest is involved, the court must consider whether the balance of public interests weighs in favor of granting or denying the injunctive relief sought. *Westlands Water Dist. v. Natural Res. Def. Council*, 43 F.3d 457, 459 (9th Cir. 1994).

## ARGUMENT

Plaintiffs ask the Court to enjoin Executive Order 20-29. In doing so it is plaintiffs who ask for unequal (and favorable) treatment. The Court should decline the invitation. As many courts have recognized over the past several months, the United States Supreme Court more than one hundred years ago established the framework within which health and safety regulations during a public health emergency such as the current one should be evaluated. In *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905), the court upheld a mandatory smallpox vaccination law against claims the law violated constitutional rights. There, the Court explained, "Real liberty for all could not exist under the operation of a principle which recognizes the right of each individual person to use his own, whether in respect of his person or his property, regardless of the injury that may be done to others." *Id.* at 26. Accordingly, the Court ruled that a state must be given leeway to protect health and safety under its police powers unless "a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law." *Id.* at 31; *see, e.g., Antietam*

Page 11 - **GOVERNOR BROWN'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**
MA/jh2/10383376-v1

*Battlefield KOA v. Hogan,* 2020 WL 2556496, *1 (D. Md. May 20, 2020).

In these extraordinary times, for the reasons explained below, the plaintiffs have not made that showing and, therefore, have not met their burden to secure extraordinary immediate relief.

## I.    Plaintiffs' freedom of religion has not been violated (First Claim for Relief).

### A.    Courts have consistently rejected Free Exercise challenges to emergency orders.

In reviewing plaintiffs' constitutional claims, this Court should examine the federal jurisprudence that has developed in the last five months.  Plaintiffs suggest that religious schools have been singled out for differential treatment, but they are the ones seeking special treatment. In seeking a unique remedy for themselves alone, they seek differential treatment from all other, similarly situated schools—namely, public schools and secular private schools.

Such arguments as the basis for First Amendment free exercise clause challenges have been rejected consistently across the nation.  *See Calvary Chapel Dayton Valley v. Sisolak*, No. 19A1070 2020 WL 4251360 (Mem) (U.S. S. Ct. July 24, 2020) (denying injunctive relief); *South Bay Pentecostal Church v. Newsom¸* 2020 WL 2687079 (9th Cir. May 22, 2020), *aff'd* 140 S.Ct. 1613, 1613 (May 29, 2020) (denying TRO and upholding religious restrictions due to equivalent restrictions upon comparable secular activities such as theaters); *Hight Plains Harvest Church v. Polis*, No. 1:20-cv-01480-RM-MEH, 2020 WL 4582720, (D. Colo. Aug. 10, 2020) (denying preliminary injunction and upholding religious restrictions); *Murphy v. Lamont*, 3:20-CV-0694 (JCH), 2020 WL 4435167 (D. Conn. Aug. 3, 2020) (denying preliminary injunction); *Ass'n of Jewish Camp Operators v. Cuomo*, 1:20-CV-0687 (GTS/DJS), 2020 WL 3766496 (N.D.N.Y. July 6, 2020) (denying preliminary injunction and upholding restrictions);  *Legacy Church, Inc. v. Kunkel*, 2020 WL 3963764 (D.N.M. July 13, 2020) (denying preliminary injunction and injunctive relief), and 2020 WL 1905586 (D.N.M. Apr. 17, 2020) (denying TRO and upholding religious restrictions); *Hight Plains Harvest Church v. Polis*, No. 1:20-cv-01480-

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

RM-MEH, 2020 WL 3263902 (D. Colo. June 16, 2020) (denying TRO); *Bullock v. Carney*, No. 20-674-CFC, 2020 WL 2813316 (D. Del. May 29, 2020) (denying TRO), *aff'd*, 806 Fed. Appx. 157 (Mem) (3[d] Cir. 2020) (denying emergency motion for TRO and/or a preliminary injunction); *Antietam Battlefield KOA v. Hogan,* 2020 WL 2556496 (D. Md. May 20, 2020) ) (denying TRO and upholding religious restrictions); *Spell v. Edwards*, 2020 WL 2509078 (M.D. La. May 15, 2020), *vacated*, 962 F.3d 175 (5th Cir. 2020) (denying preliminary injunction and dismissing appeal); *Elim Romanian Pentecostal Church v. Pritzker*, 2020 WL 2468194 (N.D. Ill. May 13, 2020) (denying TRO and upholding religious restrictions); *Calvary Chapel of Bangor v. Mills*, 2020 WL 2310913 (D. Me. May 9, 2020) (denying TRO and upholding religious restrictions); *Our Lady of Sorrows Church v. Mohammad*, No. 3:20-cv-00674-AVC (D. Conn. May 18, 2020); *Crowl v. Inslee*, No. 3:20-cv-5352 (W.D. Wash. May 8, 2020) (denying TRO); *Cross Culture Christian Ctr. v. Newsom*, , 2020 WL 2121111 (E.D. Cal. May 5, 2020) (denying TRO and upholding religious restrictions); *Roberts v. Neace*, 2020 WL 2115358 (E.D. Ky. May 4, 2020), *rev'd in part* 958 F.3d 409 (6th Cir. 2020) (denying preliminary injunction with respect to religious services); *Cassell v. Snyders*, 2020 WL 2112374 (N.D. Ill. May 3, 2020) (denying TRO and preliminary injunction, upholding religious restrictions); *Lighthouse Fellowship Church v. Northam*, 2020 WL 2110416 (E.D. Va. May 1, 2020) (denying TRO and preliminary injunction, upholding religious restrictions); *Gish v. Newsom*, No. 5:20-cv-755, 2020 WL 1979970 (C.D. Cal. Apr. 23, 2020) (denying TRO and affirming religious restrictions due to equivalent restrictions upon comparable secular activities such as theaters); *Davis v. Berke*, No. 1:20-cv-98, 2020 WL 1970712 (E.D. Tenn. Apr. 17, 2020) (denying TRO); *Abiding Place Ministries v. Wooten*, No. 3:20-cv-683-BAS-AHG, ECF No. 7 (S.D. Cal. Apr. 10, 2020) (denying TRO); *Tolle v. Northam*, 2020 WL 1955281 (E.D. Va. Apr. 8, 2020) (reaffirming and explaining denial of preliminary injunction on the grounds that the public interest outweighs any harm suffered by religious restrictions upon the plaintiff); *Nigen v. New York*, 2020 WL 1950775 (E.D.N.Y. Mar. 29, 2020) (denying TRO); *Elkhorn Baptist Church v. Brown*, 366 Or. 506 (2020) (preliminary

Page 13 - **GOVERNOR BROWN'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

MA/jh2/10383376-v1

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

injunctive relief vacated); *Hughes v. Northam*, No. CL 20-415 (Va. Cir. Ct. Russell Co. Apr. 14, 2020) (denying TRO on the grounds that the public interest outweighs any harm suffered by religious restrictions upon the plaintiff); *Hotze v. Hidalgo,* No. 2020-22609 (Tex. Dist. Ct. Apr. 13, 2020) (denying TRO); *Binford v. Sununu*, No. 217-2020-CV-00152 (N.H. Super. Ct. Mar. 25, 2020) (denying preliminary injunction).[32]

### B. The Emergency Orders are proper regulations that do not target religious observance.

Under the First Amendment, a temporary limit on in-person gatherings during a pandemic regardless of subject matter plainly regulates conduct rather than religion. Generally gatherings, whether social, civic, recreational, religious or otherwise, are equally subject to the limitations without regard to their purpose or the content of expression. Plaintiffs do not accept that there are simply pragmatic distinctions that must be made. Plaintiffs suggest, for example, that it is relevant that higher education has been allowed to continue. It is not. Higher education is conducted in a different fashion and primarily involves adults who are capable of observing safety procedures and caring for themselves. College classes typically meet for fewer hours per day and fewer days per week than do those in K-12 education, which reduces the risk of infection. *See* Sidelinger Dec. ¶ 24.

Plaintiffs also note that grocery stores and gyms have been allowed to open. While true, both are subject to occupancy limitations and numerous other restrictions in the Executive Orders. Plaintiffs do not clarify why they believe a school poses the same risk to public health as a grocery store. Indeed, there is no basis to conclude the limited, transient interactions in a grocery store are the same as the week-in, week-out constant contact between children and their adult educators that occur in a school.

---

[32] *But see Tabernacle Baptist Church v. Beshear*, 2020 WL 2305307 (E.D. Ky. May 8, 2020); *Marysville Baptist Church v. Beshear*, 2020 WL 2111316 (6th Cir. May 2, 2020) (allowing drive-in services but continuing ban on in-person services); *On Fire Christian Cntr., Inc. v. Fischer¸*2020 WL 1820249 (W.D. Ky. Apr. 11, 2020) (permitting drive-in services).

Page 14 - **GOVERNOR BROWN'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**
MA/jh2/10383376-v1

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Courts generally have upheld such health and safety focused approaches, even if the application to every form of human endeavor was not 100% the same. A challenge to an order of California Governor Gavin Newsom limiting places of worship to 25% of stated capacity or 100 persons was rejected. *See South Bay Pentecostal Church v. Newsom¸* 2020 WL 2687079 (9th Cir. May 22, 2020), *aff'd* 140 S.Ct. 1613 (May 29, 2020). The Supreme Court reached this conclusion even while acknowledging that other categories of human endeavor, including factories and supermarkets, were not subject to identical restrictions. *Id.* at 4; *see also Calvary Chapel Dayton Valley v. Sisolak*, No. 19A1070 2020 WL 4251360 (Mem) (U.S. S. Ct. July 24, 2020) (denying injunction when State allowed casinos to open under different restrictions than churches and other institutions).

### 1.    The Executive Order should not be subject to "strict scrutiny."

Plaintiffs have suggested that this Court apply a "strict scrutiny" analysis to the issues before it. But this would be error; there is no basis for the application of strict scrutiny, which would be flatly inconsistent with the Supreme Court's rulings in these types of disputes during the COVID-19 pandemic.

The Executive Orders make distinctions based on the level of risk posed by the interactions the entities require or that are typical during their operation. The distinctions made are rationally related to a governmental interest. "The bottom line is this: when faced with a society-threatening epidemic, a state may implement emergency measures that curtail constitutional rights so long as the measures have at least some 'real or substantial relation' to the public health crisis and are not 'beyond all question, a plain, palpable invasion of rights secured by the fundamental law.'" *In re Abbott*, 594 F.3d 772, 784 (5th Cir. 2020), quoting *Jacobson v. Massachusetts*, 197 U.S. 11, 31 (1905).

The Free Exercise Clause does not protect against every burden on religious practice —or schooling— incident to living in a well-ordered society. *United States v. Lee*, 455 U.S. 252

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

(1982).  Neutral laws of general applicability receive only rational basis review.  *Employment Div., Dept. of Human Res. v. Smi*th, 494 U.S. 872, 889-90 (1990).

Executive Order 20-29 is a neutral law of general applicability.  Plaintiffs claim they have been singled out and ask to be compared to higher education.  But there is no particular reason to make that comparison as opposed to the more apt analogy to public K-12 schools.  They offer no particulars regarding how they have been differentiated from public schools or secular private schools.  And plaintiffs offer no evidence that they are able to meet the conditions under which those institutions are operating.  Plaintiffs also complain that other businesses are open, but people going to dine-in restaurants, for example, are limited to groups of 10 or less, each group must be socially distanced from all others, and the groups generally do not arrive or leave together.[33]  K-12 schools of all types are grouped together with all other K-12 schools.  And the other faith-based gatherings plaintiffs reference, although not relevant to this case, are appropriately treated the same as other types of gatherings where a cohort of people gather together and generally arrive and depart at the same time.

When states have grouped activities as Oregon has here, courts have rejected applying strict scrutiny.  A district court in Maine noted, succinctly, that strict scrutiny will be applied only if the limitation is content based *on its face*.  *Calvary Chapel of Bangor v. Mills*, 2020 WL 2310913, *9, n. 17 (D. Me. May 9, 2020).  More thoroughly, the U.S. District Court in Maryland recently noted that

> Under the Supreme Court's free exercise doctrine, a neutral government decision of general applicability is subject to rational basis review, even where it has the incidental effect of burdening religious exercise. *Jesus Christ Is the Answer Ministries, Inc. v. Baltimore Cty., Maryland*, 915 F.3d 256, 265 (4th Cir. 2019) (citation omitted). Here, it is clear that the prohibition on large gatherings is rationally related to the legitimate government interest of reducing the spread of COVID-19, because the prohibition limits contact between individuals, which is how the

---

[33] Building a Safe and Strong Oregon, https://govstatus.egov.com/reopening-oregon#phase1.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

> virus spreads. Further, the order still allows for a variety of
> religious services, including "drive-in" services and services with
> ten or fewer people.

*Antietam Battlefield KOA v. Hogan,* 2020 WL 2556496, *10 (D. Md. May 20, 2020); *see also*

*Legacy Church v. Kunkel*, 2020 WL 1905586 (D.N.M. Apr. 17, 2020).

The State may take into account the differences between activities, including their

different regulatory regimes, even though every interaction between people creates risks of

infection. *See Calvary Chapel Dayton Valley v. Sisolak*, No. 320CV00303RFBVCF, 2020 WL

4260438, at *2 (D. Nev. June 11, 2020) (denying preliminary injunction of limit of 50

worshipers for religious services despite different treatment of casinos), *injunction pending*

*appeal denied*, No. 19A1070, 2020 WL 4251360 (U.S. July 24, 2020).  Even the justices who

dissented in the interlocutory appeal in *Calvary Chapel* acknowledged that so long as secular and

religious organizations' activities are treated the same, there is no Free Exercise issue. *Calvary*

*Chapel*, 2020 WL 4251360, at *6 (Kavanaugh, J., dissenting) ("a State's closing or reopening

plan may subject religious organizations to the *same* limits as secular organizations").

Plaintiffs ask this Court to ignore the facts when they selectively argue the Governor's

Executive Orders —which they incorrectly and misleadingly call the "Religious Gathering

Ban"— uniquely single out faith-based institutions.  *E.g.*, Motion at 17-18.  Even a cursory read

of those orders indicates that they do nothing of the sort.  The Governor's Orders on their face

apply the same standards to all gatherings "for any purpose" that are not covered by sector-

specific guidance.  Executive Order 20-27.  Religious institutions are plainly not singled out.[34]

---

[34] This conclusion is not altered by the assertion of Yamhill County Commissioner Mary Starrett that an assistant to the Governor said in a conference call that there would be an "exodus" out of public schools if private schools were allowed to re-open and public schools were not.  Starrett Dec. at 2.  First, the Commissioner misheard what was said.  Horner Dec. ¶ 3.  Second, the statement was only an opinion by a person non-a policy maker, not a statement of the State's official position.  Horner Dec. ¶ 4.  Third, the statement was that  public, private and parochial schools are treated *the same*, not differently.  Horner Dec. ¶ 5.  Even crediting the Starrett declaration, a single after-the-fact statement from a member of the Governor's staff falls far short of the proof needed to show the *Governor* is motivated by animus against religious schools. *Compare Trump v. Hawaii*, 138 S. Ct. 2392, 2417-18 (2018) (rejecting heightened scrutiny

Page 17 - **GOVERNOR BROWN'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING**
      **ORDER AND PRELIMINARY INJUNCTION**
      MA/jh2/10383376-v1

Similarly, there is no distinction in Executive Order 20-29 between public and private schools, or between religious and secular schools. "The minimum requirement of neutrality is that the law not discriminate on its face." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993). The Executive Orders do not do so.

Even a cursory review of Executive Orders 20-27 and 20-29 make clear there is no regulation of *substance* in their language. They group together types of human gatherings that do not relate to the primal needs for food,[35] clothing, healthcare and shelter, and treat them precisely the same, whether they are the Oregon Historical Society, the Washington County Public Affairs Council, or the Democratic or Republican Parties of Multnomah County. And they treat Life Christian School the same as Caitlin Gable or any Portland Public School. Defendants offer the declaration of the State's Epidemiologist, Dr. Sidelinger, and it provides a basis for the Court to conclude the Governor's Executive Order is medically sound. Different treatment of other business sectors, such as restaurants and stores, is based on differences in

---

despite the President's direct statements of religious animus) *with Democratic Nat'l Comm. v. Hobbs*, 948 F.3d 989, 1038-41 (9th Cir. 2020) (en banc), *cert pending* (finding law motivated by racial animus only after reviewing "(1) the historical background; (2) the sequence of events leading to enactment, including any substantive or procedural departures from the normal legislative process; (3) the relevant legislative history; and (4) whether the law has a disparate impact").

[35] As the Court said in *Cross Culture Christian Center v. Newsom,* 2020 WL 2121111, *6 (E.D. Cal. May 5, 2020):

> Plaintiffs draw a false equivalence between businesses such as grocery stores that are permitted to continue to receive customers and public gatherings including those for worship. * * * Plaintiffs seek to have large groups of people gather in a communal experience: people coming together at the same time, for the same amount of time, in the same space, and for the same purpose. Thus, the proper comparison is with similar communal activities such as theaters, schools, concert halls, and sporting events, all of which are prohibited. In contrast, picking up essential items such as food and medicine at grocery stores, drive-thru restaurants, or pharmacies are singular and transitory experiences: "An in-person religious gathering is not analogous to picking up groceries, food, or medicine, where people enter a building quickly, do not engage directly with others except at points of sale, and leave once the task is complete." *Gish*, No. 5:20-cv-00755, at 7-8.

Page 18 - **GOVERNOR BROWN'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**
MA/jh2/10383376-v1

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

operation and relative risk, supported by public health evidence.  Sidelinger Dec. ¶¶ 22-25.
Plaintiffs present no evidence to the contrary.

There is no basis to apply strict scrutiny in this action.

### 2.   The Executive Order satisfies the "rational relationship test."

Accordingly, the Court should apply the rational relationship test.  Under the rational

relationship test, "[t]he general rule is that legislation is presumed to be valid and will be

sustained if the classification drawn by the statute is rationally related to a legitimate state

interest."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). This test is

"highly deferential" to the government.  *Gary v. City of Warner Robins*, 311 F.3d 1334, 1339

(11th Cir. 2002).

Executive Orders 20-27 and 20-29 easily satisfy rational basis review. They were

expressly designed to reduce the spread of COVID-19 in Oregon.  The orders make rational

distinctions between types of human interaction because different types of interaction pose

different types and degrees of risk.  They make no reference to any religious "practice, conduct,

belief or motivation."  *Stormans, Inc. v. Wiesman*¸794 F.3d 1064, 1076 (9th Cir. 2015).  The risk

of transmission from sitting together in large groups for entire school days is greater than the risk

posed in retail establishments that require only brief encounters and no physical contact.  And it

is greater than the risk posed in restaurants where the diners do not all arrive and leave at the

same time.  *See* Sidelinger Dec. ¶¶ 22-25. The distinctions apply to all schools and are rationally

based on current science and public health knowledge.  *See, e.g.*, Sidelinger Dec. ¶¶ 16-19.

Plaintiffs ignore the overwhelming majority of cases denying injunctive relief and focus

on one of the few that favored their position, *Roberts v. Neace*, 958 F.3d 409 (6th Cir. 2020).  In

*Roberts*, however, the commonwealth of Kentucky not only ordered a *total* ban on faith

gatherings (which Oregon has never done), it did not even allow a drive-in style option (which

Oregon has always allowed).  That distinction was enough for *Roberts* to be rejected by at least

one court evaluating its legal analysis. *Amato v. Elicker*, 2020 WL 2542788, 811, n. 9 (D. Conn.

Page 19 - **GOVERNOR BROWN'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION**
MA/jh2/10383376-v1

May 19, 2020).  And, more generally, the *Roberts* analysis has been rejected in all the decisions listed in Section I(A), above.  As to the educational setting, it is simply dissimilar.

Regardless, under rational basis review, the State's "choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data" particularly where it "must necessarily engage in a process of line-drawing." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315-16 (1993).  This approach was recently upheld by the United States Supreme Court in *South Bay United Pentecostal Church v. Newsome*, 140 S.Ct. 1613, 1613 (May 29, 2020).   Here, however, there is not "rational speculation."  Here, the State's choice actually is supported by public health evidence.  *See* Sidelinger Dec, ¶¶ 16-19, 22-25.  The Governor's goal in issuing her Executive Orders relating to COVID-19 was and is to protect the lives and health of Oregonians by stemming the spread of the pandemic ravaging much of the planet.  The decisions the Governor has made —and continues to make— to keep Oregonians safe are rationally related to this goal.  Accordingly, the rational basis review test is satisfied and plaintiffs' Free Exercise Clause claim fails.

For plaintiffs to argue that the Executive Order targets them based on their religion ignores the dire public health crisis that halted nearly every type of public gathering across Oregon.  Sporting events and concerts were cancelled, schools moved online, and outdoor recreational areas like beaches, parks, playgrounds, and hiking trails were off-limits; even the state and federal courts took the drastic measure of closing their doors with only narrow exceptions.

It should be noted that large gatherings have contributed to the spread of COVID-19.  Near Seattle, Washington, a church choir held its weekly rehearsal at Mount Vernon Presbyterian Church on March 10, 2020. Following that gathering, at least forty-five individuals were diagnosed with COVID-19 and at least two died.  This spread occurred even though, according to news reports, hand sanitizer was offered to the choir members at the rehearsals, the members attempted to refrain from physical contact with one another, and the members tried to

Page 20 -  **GOVERNOR BROWN'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**
MA/jh2/10383376-v1

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

maintain physical distance between one another.  The transmission rate was 87%.[36]  Such circumstances are similar to the setting plaintiffs describe as how they plan to conduct their educational programs.

Premature school re-openings have also caused infections to spike.  "In Israel, schools reopened after the number of cases there fell to near zero. But increasing numbers of COVID-19 cases in the community after reopening quickly spread to school settings, leading to almost half of new cases in June being contracted in schools. In the United States, schools that opened in communities with high rates of cases, often without stringent public health control measures in schools, quickly saw cases in schools among students and staff leading to large numbers of individuals in quarantine and school closures." Sidelinger Dec. ¶ 17.

Plaintiffs present the Court with no medical evidence or expert opinion.  Indeed, they would frame this solely as a religious issue and ignore, and would have the Court ignore, the unprecedented health crisis facing this nation and Oregon.  Plaintiffs have not met their required burden in this motion.

### 3.    Even under an application of "strict scrutiny," the Executive Order survives.

Even if this Court applies strict scrutiny to the Executive Order, the State's actions should be upheld.  The State clearly has a compelling interest in protecting the public from COVID-19's spread.  Executive Order 20-27 is narrowly tailored to serve that interest.  Due to the asymptomatic transmission of the virus and the lack of a vaccine or widely effective treatment, measures limiting physical contract are widely recognized as the only way to slow the spread of the virus.  Sidelinger Dec. ¶¶ 26-27.  Additionally, the prohibition on public gatherings is temporary, and even while it is in place, plaintiffs' students and other Oregonians remain free to

---

[36] CDC Report: High SARS-CoV-2 Attack Rate Following Exposure at a Choir Practice, https://www.cdc.gov/mmwr/volumes/69/wr/mm6919e6.htm?s_cid=mm6919e6_w&fbclid=IwAR1QI5yQLgUl7O0YVCRUgkjPWSNZTjyG0kjyV_TTBkYg1BuVJZ4KAd-kNKE#contribAff. *See also* Richard Read, *A choir decided to go ahead with rehearsal. Now dozens have COVID-19 and two are dead*, Los Angeles Times, March 29, 2020, https://www.latimes.com/world-nation/story/2020-03-29/coronavirus-choiroutbreak.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

conduct religious education in many ways, including by attending classes online, on the phone, or at home with members of their household.

Under strict scrutiny, a proposed governmental action (1) must relate to a compelling government interest, (2) be as narrowly tailored as possible to achieve that interest, and (3) use the least restrictive means of achieving the purpose. *Roe v.Wade*, 410 U.S. 113 (1973).

First, there can be no question that combating a deadly outbreak of a global pandemic is a compelling interest. Indeed, the Supreme Court has held that much less important interests satisfy higher scrutiny. *See, e.g.*, *Ward v. Rock Against Racism*, 491 U.S. 781, 796–97 (1989) (ensuring that bandshell events are both loud enough and not too loud); *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 296 (1984) (keeping public park clean and accessible); *City Council v. Taxpayers for Vincent*, 466 U.S. 789, 806–07 (1984) (avoiding aesthetic visual clutter from signs and billboards).

Second, the ban is narrowly tailored, and does not burden substantially more conduct than necessary to advance Oregon's interest in slowing the spread of COVID-19. It restricts large in-person gatherings precisely because they are most conducive to spreading the virus. It should be noted that there are no restrictions on online education.

Third, the restriction on the size of gatherings has nothing to do with content, and is the least restrictive means of achieving the goal of social distancing. *See Boos v. Barry*, 485 U.S. 312, 320 (1988). Religious education is covered not because it is religious, but because it entails bringing a cohort of people together in person for a single purpose for a sustained period of time.

And, again, the United States Supreme Court recently affirmed the Ninth Circuit's decision to uphold such an order in California, where the restrictions on religious gatherings were more stringent than those at issue here. *See South Bay Pentecostal Church v. Newsom¸ supra*, 2020 WL 2687079, *aff'd* 140 S.Ct. 1613, 1613 (May 29, 2020) *see also Calvary Chapel Dayton Valley v. Sisolak*, No. 19A1070 2020 WL 4251360 (Mem) (U.S. S. Ct. July 24, 2020).

Page 22 -  **GOVERNOR BROWN'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**
MA/jh2/10383376-v1

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

II.    **The Governor's Executive Orders comport with the Oregon Constitution's Freedom of Religion Clauses (Second Claim for Relief).**

It is basic constitutional law that a federal court lacks jurisdiction to hear a state law claim against a sovereign state.  *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984) (*Pennhurst II*); *Mitchell v. Franchise Tax Board*, 209 F.3d 1111 (9th Cir. 2000).  In *Pennhurst II*, the Court held that federal courts are barred by the Eleventh Amendment from enjoining a state to comply with a state statute.  The nature of the prohibition is one of subject matter jurisdiction and cannot be waived by the parties.  *Smith v. Avino*, 91 F.3d 2105 (11th Cir. 1996); *Hughes v. Alabama Dept. of Public Safety*, 994 F. Supp. 1395 (M.D. Ala. 1998).  This prohibition is equally applicable where the law involved is not a legislatively enacted statute, but the state's Constitution.  *Belt v. Indiana Parole Department*, 241 F. Supp. 2d 905, 907 (N.D. Ind. 2003); *Cornwall v. Joseph*, 7 F. Supp. 2d 1106, 1108 (S.D. Cal. 1998); *Hughes v. Alabama Dept. of Public Safety*, 994 F. Supp. 1395, 1409 (M.D. Ala. 1998); *Braintree Baptist Temple v. Holbrook Public Schools*, 616 F. Supp. 81, 87-88 (D. Mass. 1984).

Claims brought against state officials in their official capacity are similarly barred under the Eleventh Amendment.  *California v. Deep Sea Research*, 523 U.S. 491, 501 (1998); *Smith v. Reeves*, 178 U.S. 436 (1900).  Accordingly, to the extent plaintiffs' motion seeks to invoke the Oregon Constitution (Complaint ¶ 41),[37] it must be denied.

In any case, plaintiffs' claim under Article I, sections 2 and 3, of the Oregon Constitution would fail for the same reasons as its claims fail under the federal Constitution.  *See Employment Div., Dep't of Human Res. v. Rogue Valley Youth for Christ*, 307 Or. 490, 497-99 (1989) (holding the state had a sufficient interest to tax religious organizations).  If anything, the

---

[37] **Section 2. Freedom of worship.** All men shall be secure in the Natural right, to worship Almighty God according to the dictates of their own consciences.-

**Section 3. Freedom of religious opinion.** No law shall in any case whatever control the free exercise, and enjoyment of religeous [sic] opinions, or interfere with the rights of conscience.

Page 23 -  **GOVERNOR BROWN'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

exemptions plaintiffs want the Governor to create would impermissibly favor religious schools and thereby conflict with the "strong state constitutional policy of neutrality toward all religions," *id.* at 498.

## III.    The Governor's Executive Orders are consistent with plaintiffs' First Amendment speech and assembly rights (Third through Sixth Claims for Relief).

In addition to asserting a claim under the Free Exercise Clause, plaintiffs assert that the Governor's Executive Order violates their First Amendment freedoms of speech and assembly.[38] They argue that strict scrutiny should be applied. But that argument misconstrues the applicable law and the facts. The Executive Orders are consistent with the First Amendment speech and assembly clauses because they advance a substantial public interest to slow the spread of a highly infectious disease, and there are numerous other available channels for the speech plaintiffs seek to engage in.[39]

Preliminarily, the limitation on gatherings should not be construed as a restriction on speech at all. The Executive Order regulates *conduct*, to which strict scrutiny does not apply. Government is permitted to regulate conduct in a way that incidentally burdens expressive activity. *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.* 547 U.S. 47, 62 (2006); *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 567 (1991).

But even if the restrictions could reasonably be construed as regulations of speech, the level of scrutiny to be applied to a restriction of speech depends upon whether the government regulation is content-neutral. Content-based regulations are ordinarily subject to strict scrutiny but content-neutral regulations are not. *Ward v. Rock Against Racism*, 491 U.S. 781, 798 n. 6

---

[38] The Third Claim for Relief is a free speech claim. The fifth Claim for Relief is a free assembly claim. The Fourth and Six Claims for Relief are not denominated, but appear to parallel their immediate predecessors.

[39] Plaintiffs do not suggest their speech and assembly claims should be evaluated under different standards. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 578 (1980) (noting that the First Amendment right of assembly "is a catalyst to augment the exercise" of free speech rights and describing time place and manner analysis as the First Amendment test); *Thomas v. Collins*, 323 U.S. 516, 530 (1945) (noting that freedoms of speech and assembly are "cognate rights").

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

(1989).  Contrary to plaintiffs' suggestions, regulations of speech on private property are not

automatically subject to a higher level of scrutiny; the question is whether a restriction is content

based.  *See Reed v. Town of Gilbert*, 576 U.S. 155 (2015) (analyzing town ordinance to

determine whether ordinance regulated speech according to its content and finding that it did).

Governments are permitted to regulate the time, place, and manner of speech and

assemblies.  *Berger v. City of Seattle*, 569 F.3d 1029, 1036 (9th Cir. 2009).  Time, place, or

manner restrictions must (1) be content-neutral, (2) be narrowly tailored to advance a significant

governmental interest, and (3) "'leave open ample alternative channels for communication of the

information.'"  *Id*. (*quoting Ward*, 491 U.S. at 791).  If it regulates speech at all, the Governor's

Executive Order is properly analyzed under the time, place, or manner standard, and the order

meets this standard.  *See, e.g., Antietam Battlefield KOA v. Hogan*, 2020 WL 2556496 (D. Md.

May 20, 2020) (upholding prohibitions on mass gatherings in Maryland Governor Hogan's

COVID-19 executive orders in a First Amendment speech and assembly challenge under a time,

place, and manner analysis).

To determine whether a regulation is content neutral, the question is "whether the

government has adopted a regulation of speech because of disagreement with the message it

conveys."  *Ward*, 491 U.S. at 791.  As the Ninth Circuit has explained, "In assessing whether a

restraint on speech is content neutral, we do not make a searching inquiry of hidden motive;

rather, we look at the literal command of the restraint."  *Menotti v. City of Seattle*, 409 F.3d

1113, 1129 (9th Cir. 2005).  Here, the Executive Order's restrictions are content-neutral because

the "literal command" of the restrictions limits all manner of gatherings apart from any messages

conveyed.  Executive Order 20-27 limits Phase I gatherings "for any purpose."  Executive Order

20-27.

The restrictions are also narrowly tailored to serve a significant governmental purpose.

Slowing the spread of a deadly virus that has caused a world-wide pandemic is a significant,

even compelling, governmental purpose.  The restrictions on gathering are narrowly tailored to

Page 25 -  **GOVERNOR BROWN'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION**

limit transmission and, specifically, the type of transmission discussed above that has been documented to occur in larger crowds.  Plaintiffs argue that the distinctions Governor Brown made between industries and types of settings demonstrates that the restrictions on gatherings are not narrowly tailored.  But they are wrong, for reasons already explained in the discussion of plaintiffs' free exercise claim.  Moreover, the fit between the government's purpose and the means chosen to advance that purpose need not be perfect:  the government "need not [use] the least restrictive or least intrusive means" available to achieve its legitimate interests. *Ward*, 491 U.S. at 798.  Ultimately, public health explanations fully support —and entirely explain— the distinctions Governor Brown made between large gatherings, on the one hand, and the occupancy of large retail stores and restaurants, on the other. Sidelinger Dec. ¶ 25.  Plaintiffs have offered no evidence at all to suggest otherwise.

Finally, there are alternative methods for plaintiffs to engage in the speech of their choice and to assemble for the same educational purposes.  The Ninth Circuit has "observed that '[t]he Supreme Court generally will not strike down a governmental action for failure to leave open ample alternative channels of communication unless the government enactment will foreclose an entire medium of public expression across the landscape of a particular community or setting.'" *Menotti v. City of Seattle,* 409 F.3d 1113, 1138 (9th Cir. 2005) (*quoting Ctr. for Fair Pub. Policy v. Maricopa County, Arizona,* 336 F.3d 1153, 1170 (9th Cir. 2003)).  The Governor's public health-based restrictions on gatherings come nowhere close to foreclosing an entire medium of public expression.  No numerical limit applies to virtual gatherings such as online services, conference-call services, or drive-through services.  These types of information delivery are, in fact, being used now by any number of educational institutions.[40]  *See Antietam Battlefield KOA*, 2020 WL 2556496 at *12 (finding sufficient alternatives to in-person gatherings to include

---

[40] *See* https://www.usatoday.com/story/news/health/2020/08/09/covid-news-us-brink-5-million-cases-trump-order-raises-questions/3327779001/;
https://www.wweek.com/news/schools/2020/07/28/oregon-schools-wont-open-to-in-person-instruction-unless-cases-sharply-decline/.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

virtual and drive-in religious services). Plaintiffs assert online learning is insufficient but provide no basis for that bald assertion. While it may be true that many students would struggle with online instruction, others may thrive or absorb the curriculum more efficiently via this alternative delivery. As with many aspects of life during the pandemic, the exigencies of protecting human life and controlling the spread of the disease means that many of our critical human activities have had to adapt to the new reality. Schools are no exception.

The Governor's Executive Orders are consistent with the First Amendment's speech and assembly clauses.

## VI.     Plaintiffs do not have a viable claim for a substantive due process violation (Seventh Claim for Relief).

It should be noted at the outset that plaintiffs do not even see fit to raise their due process claim as a basis for injunctive relief. Governor Brown will, regardless, demonstrate why any such claim would be unavailing.

"The concept of 'substantive due process,' * * * forbids the government from depriving a person of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with rights implicit in the concept of ordered liberty." *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). The Supreme Court has repeatedly noted that the doctrine is limited to the vindication of the most fundamental liberty interests. *See, e.g., Albright v. Oliver*, 510 U.S. 266, 272 (1994) ("The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right of bodily integrity."); *Reno v. Flores*, 507 U.S. 292, 302 (1993) (substantive due process "forbids the government to infringe certain 'fundamental' liberty interests); *Michael H. v. Gerald D.*, 491 U.S. 110, 122 (1989) (substantive due process requires that the asserted right be fundamental and traditionally protected by our society).

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Plaintiffs do not point to any recognized "fundamental" right. The Complaint is devoid of any assertion that any plaintiff has completely lost the ability to conduct their school in light of the ability to operate online.[41]

Here, none of these institutions have been shut down, nor is there any allegation in the Complaint that any licensure has been threatened. Instead, they have been asked to temporarily deliver their educational services via remote means, until community spread has dropped to a level that can support a safe return to in-person instruction.

A federal court in Ohio recently rejected a similar substantive due process claim. In *Hartman v. Acton*, 2020 WL 1932896 (S.D. Ohio Apr. 21, 2020), plaintiff, owner of a bridal shop, sued because her store was closed due to Ohio's stay at home order. Among the claims she asserted was a violation of her due process. The Court rejected her claim, noting that even if there is a property interest in an ongoing business, it is not an "'*unfettered* freedom' and was still subject to a state's regulatory framework." *Id.* at *7 (*citing Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611-12 (6th Cir. 2006)). Plaintiffs here do not sufficiently attach their alleged substantive due process right to the circumstances in which they find themselves.

It should also be noted that the circumstances cannot be said to "shock the conscience." The standard derives from *Rochin v. California*, 342 U.S. 165 (1952), and frequently requires a deliberate intent to cause harm. *E.g., Porter v. Osborne*, 546 F.3d 1131 (9th Cir. 2008). While it is admittedly difficult to find a factual parallel to the instant situation unless one goes back to blackouts and curfews during World War II or curfews during riots in the 1960s, it is clear that plaintiffs can have no support for any belief that the Governor was acting in any way other than what she believed to be in the best interests of the state and its citizens. That most of the states in the United States took similar steps is the clearest demonstration that Oregon has not acted

---

[41] For this reason, *Pierce v. Society of Sisters*, 268 U.S. 510 (1925), is not implicated.

Page 28 - **GOVERNOR BROWN'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**
MA/jh2/10383376-v1

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

intemperately or unusually.  Indeed, by early April, *every* state save for North Dakota, South Dakota, Nebraska and Arkansas had closed non-essential businesses.[42]

There is no violation of any right of substantive due process under these circumstances.

## V.    Plaintiffs fail to carry their burden for injunctive relief of any type.

In seeking emergency equitable relief, plaintiffs always bear a heavy burden, and that burden is even heavier where they are asking the Court to grant such relief during a public health emergency in which the relief requested risks the health of the broader community. Plaintiffs have not even begun to satisfy this burden.  Plaintiffs fail to link the standards for injunctive relief to each specific basis for their claim for relief, attempt to minimize a public health emergency with a death toll exceeding 160,000 across this nation,  and fail to explain how their desire to operate their schools gives them "liberty to expose the community * * * to communicable disease." *Prince v. Massachusetts*, 321 U.S. 158, 166-67 (1944).  They ask this Court, without any public health evidence, to substitute its judgment for that of public health experts, and to place children, educators, and the broader community at risk.  They have not provided the court with any legal basis to take that extraordinary step — and that sort of judicial policy making in this context has been expressly and repeatedly rejected by the Supreme Court in the context of this pandemic.

### A.  Plaintiffs are not likely to succeed on the merits of their claim.

The current situation is unprecedented and has brought many aspects of life in Oregon to a complete halt.  As the Supreme Court has noted, "a community has the right to protect itself against an epidemic of disease which threatens the safety of its members."  *Jacobson v. Massachusetts*, 197 U.S. 11, 27 (1905).  Such an emergency requires that states have to power to enact quarantine laws and health laws "of every description."  *Id.* at 25.  *See, e.g.*, *Compagnie Francaise de Navigation a Vapeur v. Bd. of Health of State of La.*, 186 U.S. 380 (1902)

---

[42] https://abcnews.go.com/Health/states-shut-essential-businesses-map/story?id=69770806. ABC News, April 3, 2020.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

(upholding quarantine law against constitutional challenges); *Rasmussen v. Idaho*, 181 U.S. 198 (1901) (permitting a ban on certain animal imports if evidence of disease was found); *see also Benson v. Walker*, 274 F. 622 (4th Cir. 1921) (upholding board of health resolution that prevented carnivals and circuses from entering a certain county in response to the 1918-1919 influenza epidemic); *Hickox v. Christie*, 205 F. Supp. 3d 579 (D. N.J. 2016) (upholding the eighty-hour quarantine of a nurse returning from treating Ebola patients in Sierra Leone).

As one court has noted, "measures [that] would be constitutionally intolerable in ordinary times [ ] are recognized as appropriate and even necessary responses to the present [COVID-19] crisis." *In re Abbott*, 2020 WL 1685929, *9 (5th Cir. Apr. 7, 2020) ("The authority to determine what measures are best to take properly belongs to the legislative and executive branches of the governing authority.")

As noted above, plaintiffs are wrong as to the viability of their three constitutional claims. They have not shown how they should be exempt from the steps taken to protect Oregon from one of the most significant natural disasters in its history. They cannot meaningfully distinguish the situation in Oregon from the denial of injunctive relief in California determined by the Ninth Circuit and affirmed by the Supreme Court. *See South Bay Pentecostal Church v. Newsom¸ supra*, 2020 WL 2687079, *aff'd* 140 S.Ct. 1613, 1613 (May 29, 2020); *see also Calvary Chapel Dayton Valley v. Sisolak*, No. 19A1070 2020 WL 4251360 (Mem) (U.S. S. Ct. July 24, 2020) . Plaintiffs have not demonstrated that they are likely to succeed on the merits.

**B.  There is no irreparable injury to plaintiffs, who have been limited in their operations but never closed.**

Plaintiffs have not proven that they are likely to be irreparably harmed during the pendency of this case without immediate relief. Plaintiffs allege they could be foreclosed, prosecuted or fined for operating, Complaint, ¶ 31, but do not allege that any such prosecution has ever occurred or fine levied. Plaintiffs do not allege that any of them have closed or ceased to operate.

Page 30 -  **GOVERNOR BROWN'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**
MA/jh2/10383376-v1

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Although defendants acknowledge there are intangible harms to these plaintiffs from being required to gather remotely, or in other manners that are different from before, that harm is temporary, and not more than a necessary externality of the steps taken to protect all of Oregon's citizens.

### C. The balance of equities — potential loss of life — favors the Governor.

This Court must also balance the equities. Although the ability of Oregonians to engage in acts of faith is undeniably important, the right of each Oregonian to be physically safe is also paramount. Every public gathering that would have taken place in this extraordinary time —whether a theater performance, a sporting event, or praying, singing, and listening to a sermon— would have put lives at risk. Oregon's restrictions are almost certainly one of the major reasons that, while there have been 169,926 COVID-19 deaths across the United States, there have only been 388 deaths in Oregon.[43] Sidelinger Dec. ¶¶ 9-10.

Any impact on constitutional rights is limited, not only because Executive Order 20-27 is temporary and restricted to the current emergency, but also because Phase II (in Washington County) and Phase III will continue a withdrawal of restrictions and a return to a semblance of normality. The hardships plaintiffs identify consist of their being unable to deliver their message in the manner they prefer. Defendants recognize this is not a trivial issue for faith communities. It is, however, a temporary one, and it cannot begin to compare to the potential health impacts and loss of life avoided.

Any hardship to plaintiffs from having to provide online education or make other creative changes during the pendency of this litigation (or until the reopening reaches a point at which public health data supports the allowance of additional in-person instruction) is outweighed by the benefits to all Oregonians from the restrictions implemented. Oregon's case numbers are so

---

[43] University of Washington Institute for Health Metrics and Evaluation, https://COVID19.healtdata.org/projections (Last accessed August 17, 2020); https://govstatus.egov.com/OR-OHA-COVID-19 (Last accessed August 17, 2020). Oregon's population is approximately 1.25% of the United States, but our fatalities are only 1/4 of 1%.

Page 31 - **GOVERNOR BROWN'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**
        MA/jh2/10383376-v1

low now because Governor Brown took action early, thereby sparing many Oregonians of untold suffering and death due to COVID-19 disease.  Sidelinger Dec. ¶¶ 9-10.  In fact, in no small thanks to the limitations imposed, Oregon has the seventh lowest rate of infection among the states.[44]

Plaintiffs claim there is no possible hardship to the State from allowing religious educational gatherings.  But that is wrong.  Plaintiffs cannot reasonably claim that they know how to keep their students —and by extension their students' families and communities— safe.  They do not claim to have the services of medically-trained personnel.  They do not allege they have expertise in epidemiology.  They cannot claim to be able to identify infected asymptomatic individuals, individuals who have been shown to be capable of transmitting COVID-19.[45]  Sidelinger Dec. ¶ 6.  Any hardship to plaintiffs from having to continue online services until this case is resolved is limited and substantially outweighed by the potential public health that could result from lifting the gatherings limitations for religious groups.

The balancing of the equities clearly favors the State.

### D.  There is a strong public interest in maintaining the *status quo*.

Oregon has a legitimate and compelling interest in slowing the spread of COVID-19 and in protecting the health and life of every Oregonian.  Executive Order 20-29 is aligned with that purpose.  Whatever constitutional rights plaintiffs possess, they do not include the "liberty to expose the community * * * to a communicable disease."  *Prince v. Massachusetts*, 321 U.S.158, 166-67 (1944).

---

[44] https://www.statista.com/statistics/1109004/coronavirus-covid19-cases-rate-us-americans-by-state/ (Last accessed August 17, 2020)
[45] https://jamanetwork.com/journals/jama/fullarticle/2762028.

Page 32 -  **GOVERNOR BROWN'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**
MA/jh2/10383376-v1

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

The current pandemic unfortunately provides copious examples of individuals, including asymptomatic ones, spreading COVID-19 throughout communities through attendance at public gatherings, including where physical distancing and cleanliness precautions were implemented.[46]

Exempting plaintiffs and other religious schools from the Executive Order's stay-at-home requirement so they might convene large gatherings (Horizon Christian has approximately 180 students and Life Christian has 175 [Complaint ¶¶ 36-37]) will pose a public health risk and create an unreasonable risk of exacerbating the spread of COVID-19, infecting, and potentially killing, many Oregonians. The risk to health and life is just too great. All that is asked of the plaintiffs is that they continue to engage in creative methods of communicating with their students just a little bit longer —as is being asked of every school in Oregon, religious or secular, public or private, K-12 or institution of higher education— to save the health and lives of Oregonians. It is hard to imagine a situation in which equitable relief could be less appropriate and the public interest more profound. *See Elkhorn Baptist Church v. Brown*, 366 Or. 506, 546 (2020) (Garrett, J., concurring) (concluding that the public interest outweighed the plaintiffs' interests when Governor's orders were "based on consideration of the range of dangers that different Oregonians may face from COVID-19, the scientific evidence that is available to her regarding how best to contain the disease, and the strong interests of Oregonians in maintaining their religious practices and businesses but also in protecting themselves and their loved ones").

At most, if the Court determines plaintiffs are entitled to a remedy, it should be narrowly limited *to plaintiffs*. Such a limitation would better protect the public interest as well as align with the plaintiffs' alleged need for relief than the statewide relief plaintiffs demand on behalf of

---

[46] High SARS-CoV-2 Attack Rate Following Exposure at a Choir Practice — Skagit County, Washington, March 2020, Centers for Disease Control and Prevention, Morbidity and Mortality Weekly Report, May 15, 2020 (located at https://www.cdc.gov/mmwr/volumes/69/wr/mm6919e6.htm).

Page 33 - **GOVERNOR BROWN'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

religious groups across Oregon who are not parties to this case.  That said, for all the reasons set forth above, no extraordinary relief should be granted.

**CONCLUSION**

The Governor is committed to protecting the citizens of Oregon.  The steps she has taken have been working.  Oregon has seen one of the lowest rates of death from COVID-19 in the nation *not* because the risk is not real, but because the Governor acted before the crisis fully hit our state, and our people rose to the occasion, which significantly reduced the potential for people to be exposed to the virus.   That plaintiffs may have parents of their students willing — during a pandemic— and confident enough in their schools' safety to come back at all is in major part due to the steps taken by the Governor and the collective sacrifices of Oregonians.

There are no shortcuts out of this pandemic.  The careful, data-driven approach that has served Oregon well in controlling this pandemic should be allowed to continue to drive the gradual, phased reopening currently underway.

For the foregoing reasons, plaintiffs' application for a temporary restraining order and a preliminary injunction should be denied.

*s/Marc Abrams*

MARC ABRAMS #890149
Assistant Attorney-in-Charge
BRIAN SIMMONDS MARSHALL #196129
Senior Assistant Attorney General
Trial Attorney
Tel (971) 673-1880
Fax (971) 673-5000
marc.abrams@doj.state.or.us
brian.s.marshall@doj.state.or.us
Of Attorneys for Defendants

Page 34 -  **GOVERNOR BROWN'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**
MA/jh2/10383376-v1

## CERTIFICATE OF SERVICE

I certify that on August __19__, 2020, I served the foregoing GOVERNOR BROWN'S

RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND

PRELIMINARY INJUNCTION upon the parties hereto by the method indicated below, and

addressed to the following:

John Kaempf                                    ___ HAND DELIVERY
Kaempf Law Firm PC                             ___ MAIL DELIVERY
1050 S.W. Sixth Avenue                         ___ OVERNIGHT MAIL
Suite 1414                                      X  E-MAIL
Portland, Oregon 97204                          X  E-SERVE


                                    *s/Marc Abrams*
                                    MARC ABRAMS #890149
                                    Assistant Attorney-in-Charge
                                    BRIAN SIMMONDS MARSHALL #196129
                                    Senior Assistant Attorney General
                                    Trial Attorney
                                    Tel (971) 673-1880
                                    Fax (971) 673-5000
                                    marc.abrams@doj.state.or.us
                                    brian.s.marshall@doj.state.or.us
                                    Of Attorneys for Defendant

Page 35 -  **GOVERNOR BROWN'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING
           ORDER AND PRELIMINARY INJUNCTION**
           MA/jh2/10383376-v1