John Kaempf, OSB #925391
KAEMPF LAW FIRM PC
1050 S.W. Sixth Avenue
Suite 1414
Portland, Oregon 97204
Telephone: (503) 224-5006
Email: john@kaempflawfirm.com

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **HORIZON CHRISTIAN SCHOOL, et al.,** | Civil No. 3:20-cv-01345-MO |
| **Plaintiffs,** | **PLAINTIFFS' RENEWED EMERGENCY MOTION FOR A PRELIMINARY INJUNCTION BASED ON NEW EVIDENCE AND LAW ISSUED LAST WEEK AND SUPPORTING MEMORANDUM OF LAW** |
| **v.** | |
| **KATE BROWN, GOVERNOR OF THE STATE OF OREGON, in her official capacity only,** | |
| **Defendant**. | (Request for Expedited Oral Argument) |

## LOCAL RULE 7-1 COMPLIANCE

In compliance with this Rule, the parties made a good faith effort through a telephone conference to resolve the dispute and have been unable to do so.

## EMERGENCY MOTION

Under FRCP 65, Plaintiffs renew their emergency motion for a preliminary injunction concerning only their Free Exercise, Equal Protection, and Section 1983 civil rights claims. This is for the following straightforward reasons. They are (1) new evidence; and (2) Defendant's relevant new Executive Order "EO" 20-65, issued last week *after* the November 17 hearing of Plaintiffs' motion for a preliminary injunction. EO 20-65 unfairly targets "faith institutions" like Plaintiffs to be limited to 25 people indoors, while exempting public schools from it. Thus, Plaintiffs are now treated *exactly* like churches are in EO 20-27.

Concerning the new evidence, on November 19, 2020, two days after the hearing of Plaintiffs' motion for a preliminary injunction, Doctor Robert Redfield, the Director of the Centers for Disease Control and Prevention "CDC," said K-12 schools should reopen. His reason is that K-12 *schools* are some of the "*safest* places" for "*kids* to be." Here is how he explained his expert analysis: "Today, there's extensive data that we have—we've gathered over the last two to three months—that confirm that K-12 schools can operate with face-to-face learning and they can do it safely and they can do it responsibly. The infections that we've identified in schools when they've been evaluated were *not* acquired in *schools*. They were actually acquired in the community and in the *household*." https://www.c-span.org/video/?c4924557/cdc-director-redfield-data-supports-face-face-learning-schools.

https://www.washingtontimes.com/news/2020/nov/20/robert-redfield-cdc-director-school-one-of-the-saf/ (attached as Exhibit A) (emphasis added).

Defendant concedes that the Court should consider the opinions of "public health experts" regarding "how to protect the safety and health of Oregonians in the COVID-19 pandemic.  Those decisions have been based on the best understanding of the threat of the virus available."  And "the scientific understanding of the virus has evolved as the facts on the ground shift."  Thus, Defendant concedes that the Court should consider the opinion of "public health *experts* regarding what is *safe*— for the *students*, teachers, staff, their families, and the communities they live in."  And perhaps most importantly, Defendant expressly requests that the Court follow the guidance of the **CDC**, including statements on its website. (Defendant's Response Memorandum to Plaintiffs' Motion for a Preliminary Injunction at 1-3, and n. 2 (emphasis added).)

Under FRE 201, "the court may take judicial notice of a fact that is not subject to reasonable dispute because it is either generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  And "the court has taken judicial notice of several facts and statistics throughout the order from the Center for Disease Control and Prevention's website."  *Middleton v. Andino*, 2020 WL 5591590 at n. 3 (D SC 2020) (granting a preliminary injunction).  *Fauley v. Washington Mut. Bank FA,* 2014 WL 1217852 at *4 (D. Or. 2014) (Judge Mosman granted the "requests for judicial notice" because "each document meets Rule 201's requirements" given that they "are matters of public record that are beyond dispute.").

Second, during the November 17 hearing, the Court ruled that the deferential standard from *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 28 (1905), does not apply to Defendant's actions.  (Transcript at 5.)

Thus, strict scrutiny applies to Defendant's "disguised" targeting of Plaintiffs based on their sincere religious beliefs.  *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1079 (9th Cir. 2015); *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 547 (1993). *See also Soos v. Cuomo*, 2020 WL 3488742 at *8 (N.D. NY 2020): Granting a preliminary injunction on behalf of the plaintiffs, Catholic priests and Catholics who attend church in Brooklyn, because, as here, the defendant governor imposed a cap on church gatherings, but did not place any limitation on Black Lives Matter protests.  "A law burdening religious practice that is not neutral or not of general application must undergo the most *rigorous* of scrutiny. *** Neutrality and general applicability are interrelated, and failure to satisfy one requirement is a likely indication that the other has not been satisfied."  (Citing *Lukumi*) (emphasis added).  And the *Soos* "plaintiffs have demonstrated a likelihood of success on the merits with respect to their free exercise claim" because "they would fail strict scrutiny."  *Id*. at *9.

Third, the Court is the fact-finder for purposes of this Motion.  "The grant of a preliminary injunction is reviewed for abuse of discretion, and that discretion is abused" only "where the district court based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence."  *Roe v. Anderson*, 134 F.3d 1400, 1402 (9th Cir. 1998) (cleaned up; footnote and citation omitted.)

Page 4 - Plaintiffs' RENEWED Emergency Motion for a Preliminary
Injunction and Supporting Memorandum of  Law

Fourth, "the precise question of when restrictions on particular social activities should be lifted during the pandemic is a dynamic and fact-intensive matter subject to reasonable disagreement." *South Bay United Pentecostal Church v. Newsom*, 140 S.Ct. 1613 (2020) (Mem.) (Roberts, C.J., concurring).

Fifth, this is why the Court ruled that the *South Bay* and *Calvary Chapel* decisions from the US Supreme Court earlier this year "are not binding on Oregon with materially different facts," because their "limited shelf life" has "expired." (November 17 hearing transcript at 5; August 20 hearing transcript at 34.)

Sixth, concerning the balance of the equities and public interest requirements for obtaining a preliminary injunction, on November 17, the Court stated that "all other hardships must bow to the goal of protecting *human life*, not speculatively but in profound reality." (Transcript at 55 (emphasis added).)

Therefore, in its role as fact-finder, the Court should follow the new finding of Dr. Redfield, the Director of the CDC—the "top dog"—issued on November 19 that K-12 schools are "some of the *safest* places for kids to be" to best protect "human life."

Moreover, concerning human life, <u>Defendant</u> asks the Court to judicially notice documents from "highly respected and authoritative sources relating to the worldwide COVID-19 crisis" such as those from "the *Oregon Health Authority*." (Defendant's Response Memorandum to Plaintiffs' Motion for a Preliminary Injunction at 3, n.1 (emphasis added).)

Therefore, under FRE 201, the Court should judicially notice the latest (November 23, 2020) "demographic data" concerning COVID-19 cases per 100,000 issued by the

Oregon health Authority.  A true copy of it is attached as Exhibit B.  It reflects that not a **single** person aged 9 years or younger—or aged 10 to 19 years—has died from Covid-19.

Seventh, during the November 17 hearing, the Court correctly recognized that the record at that time showed "in a manner that Plaintiffs have never rebutted" that "K-12 education is different than those other settings" that have been allowed to remain open, like "grocery stores" and "childcare." (Transcript at 54.)  That is no longer the case.

Eighth, also at the November 17 hearing, the Court acknowledged Plaintiffs' argument that "the full web of the executive orders" are "an incoherent patchwork that favors other gatherings illogically while punishing religious gatherings.  With respect to EO-27, there is some strength to that argument.  And if I had a *church* in front of me seeking worship permission, then that would be a *stronger* case." (Transcript at 53 (emphasis added).  The Court further stated:  EO "27's limitations on *faith-based* gatherings presents an entirely *different* case, in my view *much stronger* case, quite frankly, than the ones Plaintiffs present. Church worship, for example, not Christian schools, drove the results in the Kentucky cases that Plaintiffs rely on, not schooling but worship." *Id*. at 6 (emphasis added).

Ninth, the Court's just-cited statement is very important because last week, after the November 17 hearing, Defendant issued EO 20-65.  It went into effect on November 18.  It states, in relevant part, that "*faith institutions*"— **exactly** like churches in EO-27—are now "*limited* to a maximum of *25* people indoors."  (Emphasis added.)

But EO 20-65 further states that it "does *not* apply to workplaces,…child care facilities, *schools,"* or "grocery stores."  (Emphasis added.)

Page 6 - Plaintiffs' RENEWED Emergency Motion for a Preliminary
Injunction and Supporting Memorandum of Law

**KAEMPF LAW FIRM PC**
1050 SW Sixth Avenue Suite 1414
Portland, Oregon  97204
Telephone: 503-224-5006

By implication, and looking at the complete terms and context of EO-65, "schools" are discussed separately, and thus mean something different than "faith institutions." Therefore, as used in EO 20-65, the exempted "schools" means only *public* schools.

Thus, on its face, EO 20-65 unfairly treats "faith institutions" and public schools differently.

The term "faith institutions" as used in EO 20-65 is not defined.  "Therefore, the Court will look to cases construing the term." *Lee v. U.S.*, 2013 WL 1120781 at *1 (N.D. Cal 2013).  "It is undisputed that the *school* is not a church.  But the record establishes that it is nonetheless a *faith-based institution* enjoying First Amendment protection for the free exercise of religion."  *In re Episcopal School of Dallas, Inc.*, 556 S.W.3d 347, 357 (Tex App 2017) (emphasis added).

And "the religious education and formation of students is the very reason for the existence of most private religious schools." *Our Lady of Guadalupe School v. Morrissey-Berru*, 140 S.Ct. 2040, 2055 (2020).

Thus, the "faith institutions" subject to EO 20-65, which places a cap of 25 people on *their* indoor meetings—which includes the Plaintiff religious schools—but *excludes* public schools—*are* now *exactly* like the churches in EO 20-27.  That is because it similarly states, in relevant part, that "*faith-based* gatherings of more than *25* people are prohibited." (Emphasis added.)

Therefore, because of EO 20-65 applying to "faith institutions" like Plaintiffs, but *exempting* public "schools," this case now *is* the "*much stronger* case" the Court recognized during the November 17 hearing.

Page 7 - Plaintiffs' RENEWED Emergency Motion for a Preliminary
Injunction and Supporting Memorandum of Law

**KAEMPF LAW FIRM PC**
1050 SW Sixth Avenue Suite 1414
Portland, Oregon  97204
Telephone: 503-224-5006

As noted above, EO 20-65 also exempts "grocery stores," but not "faith institutions" like Plaintiffs.  But "assuming all of the same precautions are taken, why can someone safely walk down a grocery store aisle but not a pew?;" and "while the law may take periodic naps during a pandemic, we will not let it sleep through one."  *Roberts v. Neace*, 958 F.3d 409, 414-415 (6th Cir. 2020) ( granting the requested injunction).  The 6th Circuit's decision in *Roberts* deserves special weight because it is cited with approval in the *South Bay* emergency petition joint dissent by Justices Thomas, Gorsuch, and Kavanaugh—which may become the Court's majority decision on the merits.  *South Bay*, 140 S.Ct. 1613; *Capitol Hill Baptist Church v. Bowser*, 2020 WL 5995126 at n. 9 (D. D.C. 2020) (granting the requested injunction); *Butler v. Wolf*, 2020 WL 5510690 at n. 9 (W.D. Pa 2020) (granting the requested injunction).

And Defendant has allowed completely safety-free, and very large (sometimes thousands of people) Black Lives Matter **protests** throughout Oregon for 6 months.  But EO 20-65 caps "outdoor gatherings" at "faith institutions" at 50 people.  As shown in the cases previously cited, a governor favoring the First Amendment right to protest over the First Amendment right to freely exercise religion is unconstitutional, and warrants a preliminary injunction.  *Soos v. Cuomo*, 2020 WL 3488742 (N.D. NY 2020); *Capitol Hill Baptist Church*, 2020 WL 5995126.

Yes, EO 20-65 also states that "K-12 schools continue to be subject to Executive Order 20-29."  But the "tie" found by the Court to be embodied in EO 20-29's treatment of all K-12 schools does not change the fact that EO 20-65, just like EO 20-27's 25-person cap

on indoor "faith-based gatherings," unfairly limits Plaintiffs here—"faith institutions"—while exempting public "schools."

And EO 20-65 mentioning EO 20-27, and EO 20-29, and not stating that EO 20-65 replaces them—thereby confirming that they are separate EOs— shows that there are now three separate relevant entities.  (1) "Faith-based gatherings" (EO 20-27); (2) K-12 "schools" (EO 20-29); and (3) "faith institutions" (EO 20-65).

Also, as the Court knows, during the November 17 hearing, Plaintiffs presented the unrebutted live testimony of Yamhill County Commissioner Mary Starrett.  She testified that during an August 5 meeting with county commissioners led by Leah Horner, an economic policy advisor to Defendant, she asked Ms. Horner why K-12 parochial and private schools are not being allowed to reopen.  Ms. Horner responded that this is because Defendant fears a "mass exodus from public schools" if she allows that to happen.  Significantly, at the hearing, the Court found, concerning Ms. Horner's statement, that "no one is saying it wasn't said."  And "I already think the State has conceded that that is precisely what was said." (Transcript at 28.)

Therefore, because (1) Defendant's EOs "on their face" unfairly discriminate between "faith institutions" and public schools; and (2) because of the undisputed evidence that a significant part of the unconstitutional "disguised" intent behind Defendant's relevant EOs is to prevent a "mass exodus" from her public schools to religious schools—and the related significant loss of money to the State—if religious schools are allowed reopen, the Court should grant this Motion.

Page 9 - Plaintiffs' RENEWED Emergency Motion for a Preliminary
Injunction and Supporting Memorandum of Law

**KAEMPF LAW FIRM PC**
1050 SW Sixth Avenue Suite 1414
Portland, Oregon  97204
Telephone: 503-224-5006

Next, at the November 17 hearing, concerning the Supreme Court's statement in *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993), that "masked governmental hostility" to religion is also unconstitutional, this Court correctly noted that the facts in *Lukumi* involve an animal sacrifice law that was directed *solely* at the religion at issue. But neither *Lukumi* itself, nor any subsequent case, holds that the "masked governmental hostility" holding is limited only to laws solely directed at one religion.

These are the relevant statements from *Lukumi*: "The Free Exercise Clause commits government itself to religious tolerance, and upon even *slight* suspicion that proposals for state intervention stem from *animosity* to *religion* or distrust of its practices, all officials must pause to remember their own high duty to the Constitution and to the rights it secures. Those in office must be resolute in resisting importunate demands and must ensure that the *sole* reasons for imposing the burdens of law and regulation are *secular*. Legislators may not devise mechanisms, overt or *disguised*, designed to persecute or *oppress* a *religion* or its practices." *Id*. at 547 (emphasis added). And "we reject the contention" that "our inquiry must end with the text of the laws at issue. Facial neutrality is not determinative. The Free Exercise Clause" extends "beyond facial discrimination. The Clause forbids *subtle* departures from neutrality." And "apart from the text, the effect of a law in its *real operation* is *strong* evidence of its object." *Id*. at 534-535 (emphasis added).

Thus, nothing in *Lukumi*, or any later case, states that its analysis is limited only to laws solely directed at the practices of just one religion. That just happened to be the facts in *Lukumi*.

Applying *Lukumi*, here, Plaintiffs present ample evidence that the "sole reasons" for Defendant's relevant EOs are <u>not</u> "secular." Rather, they are also intended to harm religious schools through preventing public school students from transferring to them if they are safely reopened for in-person classes. And *Lukumi* holds that under the Free Exercise Clause, upon even "slight *suspicion* that proposals for state intervention stem from animosity to *religion*" should cause the court to remember its "high duty to the Constitution and to the rights it secures." *Id*. at 547 (emphasis added). And even "*subtle* departures from neutrality" evidenced by "the <u>effect</u> of a law in its *real* operation" are "strong evidence" of its antireligious object. *Id*. at 534-535 (emphasis added).

And "the government, consistent with the Constitution's guarantee of free exercise, cannot impose regulations that are *hostile* to the religious beliefs of affected citizens, *Church of Lukumi Babalu Aye, Inc. v. Hialeah,* 508 U.S. 520 (1993). " And "factors relevant to the assessment of governmental neutrality include the historical *background* of the decision under challenge, the specific series of events leading to the enactment or official *policy* in question, and the legislative or administrative *history*." In "view of these factors, the record here demonstrates that the [Defendant State Civil Rights Commission's consideration of the case of the Plaintiff, a Christian baker who, based on his sincere religious beliefs, refused to create a cake for a same-sex marriage]," was "neither tolerant nor respectful of his religious beliefs." *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Com'n*, 138 S.Ct. 1719, 1721-1722 (2018) (emphasis added).

Thus, a mere "slight suspicion" that a law is "hostile" to religion is enough to show that Defendant's actions are unconstitutional. And here, that is more than established by Ms.

Starrett's undisputed testimony that Ms. Horner, an economic policy advisor to Defendant, stated on August 5 that Defendant is not allowing parochial schools to reopen because she fears a "mass exodus" from her public schools, and the related loss of money to the State, if she does that.

Therefore, a review of the facts and holdings in *Lukimi* and *Masterpiece Cakeshop* shows that neither case, nor any other case, requires a showing that the challenged law was enacted "solely" to target just one religion.

Thus, applying *Lukimi* and *Masterpiece Cakeshop*, the Court should hold that Defendant's "disguised" intent to prevent a "mass exodus" from her public schools to religious schools, which would benefit them, but would cause the State to lose a lot of money—which is the "background of the decision under challenge" that *Masterpiece Cakeshop* requires the Court to consider—violates Plaintiffs' First Amendment right to freely exercise their religion, and the Equal Protection Clause. That warrants a preliminary injunction.

Plaintiffs also incorporate by reference the legal authorities and evidence they submitted in support of their TRO motion and their prior preliminary injunction motion.

## **CONCLUSION**

On November 19, CDC Director Dr. Robert Redfield stated that K-12 schools are some of the "*safest* places" for "*kids* to be." And Defendant admits that the Court should follow what the CDC says. (Defendant's Response Memorandum to Plaintiffs' Motion for a Preliminary Injunction at 3, n. 2.)

The Court understandably stated its belief that "all other hardships must bow to the goal of protecting *human life*, not speculatively but in profound reality." (November 17 Transcript at 55 (emphasis added).) And the latest data from the Oregon Health Authority, which *Defendant* urges the court to follow, confirms that not a **single** child or teenager has died from COVID-19 in Oregon. (Defendant's Response Memorandum to Plaintiffs' Motion for a Preliminary Injunction at 3, n. 1; Exhibit B.)

And *South Bay* holds that this is a "fact intensive matter," with the Court serving as the fact-finder under *Roe*. The facts have changed in favor of Plaintiffs. To uphold their fundamental constitutional rights, and because K-12 schools are some of the "safest places for kids to be," the Court should grant this Motion to "protect human life."

And as held in the *Soos* and *Capitol Hill Baptist Church* cases, it is unconstitutional for Defendant to favor the First Amendment right to protest (unsafely), while disfavoring Plaintiffs' bedrock First Amendment right to freely (and safely) exercise their religion.

"There is no pandemic exception to the Constitution of the United States or the Free Exercise Clause of the First Amendment." *Berean Baptist Church v. Governor Roy Cooper*, 2020 WL 2514313 at *1 (E.D. NC May 26, 2020) (granting injunctive relief).

"Lost time means lost rights." *Roberts*, 958 F.3d at 413 (granting injunctive relief).

Given that Plaintiffs now show that they *are* being treated in an unconstitutionally unfair and different way, just like Oregon's churches—and the churches in the many cited District Court decisions granting preliminary injunctions—the Court should grant this Motion so Plaintiffs can safely reopen with in-person classes, as CDC Director Redfield recommends.

**KAEMPF LAW FIRM PC**
1050 SW Sixth Avenue Suite 1414
Portland, Oregon 97204
Telephone: 503-224-5006

As authorized by FRCP 65, and as in the cases Plaintiffs cite, Plaintiffs request a statewide injunction applicable to them and all similarly situated religious schools.

Respectfully submitted on November 25, 2020.

KAEMPF LAW FIRM PC


/s/ John Kaempf
John Kaempf, OSB #925391
john@kaempflawfirm.com

Attorney for Plaintiffs

**KAEMPF LAW FIRM PC**
1050 SW Sixth Avenue Suite 1414
Portland, Oregon  97204
Telephone: 503-224-5006

# CDC Director Robert Redfield: School 'one of the safest places' kids can be



Centers for Disease Control and Prevention Director Dr. Robert Redfield speaks during a news conference with the coronavirus task force at the White House in Washington, Thursday, Nov. 19, 2020. (AP Photo/Susan Walsh) more >

By Jessica Chasmar - The Washington Times - Friday, November 20, 2020

EXHIBIT A
PAGE 1 OF 1

Centers for Disease Control and Prevention Director Robert Redfield said school is "one of the safest places" children can be during the coronavirus pandemic, despite many school districts switching back to in-person learning amid a widespread uptick in infections.

During the coronavirus task force briefing at the White House, Dr. Redfield urged local leaders to make "data-driven decisions" instead of emotional ones when it comes to shutting down schools.

"Today, there's extensive data that we have gathered over the past few months to confirm that K-12 schools can operate with face-to-face learning, and they can do it safely and they can do it responsibly," he said. "The infections that we've identified in schools when they've been evaluated were not acquired in schools. They were actually acquired in the community and in the household.

**TOP STORIES**

'One kind of fraud': Biden won thousands of illegal votes by noncitizens, study shows

Whoopi Goldberg, Sunny Hostin terrified by MAGA resilience: 'Trumpism is here to stay'

Illegal border crossings are surging as migrants anticipate Biden changes, DHS says

"The truth is, for kids K-12, one of the safest places they can be, from our perspective, is to remain in school," he continued. "And it's really important that following the data, making sure we don't make emotional decisions about

EXHIBIT ____ A

PAGE __2__ OF __7__

what to close and what not to close. And I'm here to say clearly the data strongly supports that K-12 schools — as well as institutes of higher learning — really are not where we're having our challenges.

"And it would be counterproductive from my point of view, from a public health point of view, just in containing the epidemic, if there was an emotional response, to say, 'Let's close the schools,'" he added.



**Top Articles**

READ MORE

**Pennsylvania Gov. Tom Wolf bans alcohol sales on Thanksgiving Eve, 'the biggest day for drinking'**

The comments came the same day New York City Mayor Bill de Blasio shut down in-person learning until further notice without any clear plan for reopening after the city overall hit a 3% positive COVID-19 test rate, while the rate for schools was just 0.17%.

EXHIBIT $A$
PAGE $3$ OF $7$

Members of the White House Coronavirus Task Force Hold a Press Bri...



## SIGN UP FOR DAILY NEWSLETTERS

Email Address      Submit   Manage Newsletters

Copyright © 2020 The Washington Times, LLC. Click here for reprint permission.

**Please read our comment policy before commenting.**

EXHIBIT *A*
PAGE 4 OF 7

EXHIBIT _A_

PAGE _5_ OF _7_

TV NETWORKS  RADIO  SCHEDULE

MYC-SPAN LOGIN

C-SPAN
CREATED BY CABLE IN 1979

VIDEO LIBRARY | 263,654 hours of content

QUICK GUIDE  Search by keyword, name, etc.

Series ∨  Congress  Executive  Supreme Court

Download Free

Start Speed Test

TestForSpeed.com  Open

Advertisement

NOVEMBER 19, 2020 | CLIP OF **VICE PRESIDENT PENCE WITH CORONAVIRUS TASK FORCE BRIEFING**

Report Video Issue

### CDC Director Redfield Says Data Supports Face-to-Face Learning in Schools

CDC Director Dr. Robert Redfield tells reporters at the White House that schools do not need to be closed and says they are among the... read more ∨

*Transcript type*   *Search this transcript*

Text ∨   🔍

**HOSTING ORGANIZATION**
White House

00:00:00  THANK YOU. THIS INFORMATION WILL BE VERY HELPFUL FOR FAMILIE
▶        KNOW WHAT TO DO WHEN FACED WITH THE SITUATION ESPECIALLY /
         HAVE OUR COLLEGE STUDENTS...
∨ Show Full Text

00:10:52  THANK YOU MR. VICE PRESIDENT AND IT'S A MOMENT WE WANT TO C
▶        EVERY AMERICAN TO INCREASE THEIR VIGILANCE AND I WANT TO GO
         THROUGH SOME DATA ABOUT...
∨ Show Full Text

00:18:24  MR. VICE PRESIDENT THANK YOU SIR AND DR. BIRX THANK YOU MAAM
▶        ARE IN A MUCH BETTER PLACE AND CONTINUE TO IMPROVE UPON TH
         CAPABILITY. WE CONTINUE TO...
∨ Show Full Text

00:21:13  WITH THAT I'M GOING TO INVITE DR. TONY FAUCI TO COME UP AND SI
▶        THOUGHTS ON THE DEVELOPMENT OF A VACCINE WHICH IS GETTING
         GREAT HOPE THAT I...
∨ Show Full Text

*This transcript was compiled from uncorrected Closed Captioning.*

ℹ More information about
*CDC Director Redfield Says Data Supports
Face-to-Face Learning in Schools*  ∨

🛒 Purchase a Download
*CDC Director Redfield Says Data Supports
Face-to-Face Learning in Schools*  ∨

EXHIBIT ___*A*___

PAGE ___6___ OF ___7___

## ✂ USER CREATED CLIPS FROM THIS VIDEO



NOVEMBER 19, 2020

CDC Director
Redfield Says Data
Supports Face-to-
Face Learning in
Schools

5 MINUTES | 18,342 VIEWS



NOVEMBER 19, 2020

Dr. Fauci Urges
Public to Double
Down on Public
Health Measures
Until Coronavirus
Vaccine Is Available

6 MINUTES | 1,649 VIEWS



NOVEMBER 19, 2020

User Clip: Dr
Deborah Birx reviews
recent coronavirus
surge (6¼min.vid.)

6 MINUTES | 87 VIEWS



NOVEMBER 19, 2020

User Clip: Covid
Fatigue

6 MINUTES | 85 VIEWS

*View all clips from this video >*



Advertisement

## ABOUT C-SPAN

Our Mission
Our History
Cameras In The Court
Milestones
Leadership
Jobs ☑
In The Community
Video Library
Viewer Guide

## RESOURCES

C-SPAN Classroom
Blog
Series A-Z
Press Center
FAQs
Contact Us
Store
C-SPAN's Book Collection
World Legislatures

MyC-SPAN Login

**C-SPAN Radio App**
 Download ☑
 Download ☑

 C-SPAN Podcasts

## FOLLOW C-SPAN

© 2020 National Cable Satellite Corporation   |   Copyrights and Licensing   |   Terms and Conditions   |   Privacy

EXHIBIT _A_
PAGE _7_ OF _7_

This content is best viewed in desktop layout.

## Demographic Data - Cases Per 100,000

| Demographic | Categories (group).. | |
|---|---|---|
| Sex Group | Female | 1,589.5 |
| | Male | 1,523.0 |
| | Non-binary | |
| | Refused/Unknown | |
| Age Group | 9 and younger | 673.2 |
| | 10 to 19 | 1,459.5 |
| | 20 to 29 | 2,592.0 |
| | 30 to 39 | 2,055.6 |
| | 40 to 49 | 1,916.4 |
| | 50 to 59 | 1,556.1 |
| | 60 to 69 | 972.0 |
| | 70 to 79 | 910.0 |
| | 80+ | 1,401.8 |
| | Refused/Unknown | |
| Race | AI/AN | 2,845.8 |
| | Asian | 1,034.7 |
| | Black | 2,379.5 |
| | Multiracial | 624.4 |
| | Other | 14,497.5 |



## Demographic Data - Hospitalizaton Status

| Demographic | Categories (group) | Hospitalization Status | | |
|---|---|---|---|---|
| | | Hospitalized | Not Hospitalized | Hospitalization Status Unknown |
| Sex Group | Female | 1,936 | 25,689 | 6,560 |
| | Male | 2,171 | 22,765 | 6,829 |
| | Non-binary | | 6 | |
| | Refused/Unknown | 13 | 164 | 200 |
| Age Group | 9 and younger | 46 | 2,587 | 598 |
| | 10 to 19 | 65 | 5,634 | 1,551 |
| | 20 to 29 | 283 | 10,911 | 3,199 |
| | 30 to 39 | 323 | 9,080 | 2,496 |
| | 40 to 49 | 461 | 7,899 | 2,053 |
| | 50 to 59 | 623 | 6,061 | 1,642 |
| | 60 to 69 | 762 | 3,544 | 937 |
| | 70 to 79 | 796 | 1,750 | 549 |
| | 80+ | 737 | 1,121 | 452 |
| | Refused/Unknown | 24 | 37 | 72 |
| Race | AI/AN | 115 | 1,115 | 157 |
| | Asian | 140 | 1,392 | 342 |
| | Black | 147 | 1,477 | 297 |
| | Multiracial | 70 | 1,028 | 157 |



EXHIBIT _B_

PAGE _2_ OF _3_

## Demographic Data - Death Status

| Demographic | Categories (group).. | Death Status Alive | Death Status Died | Total |
|---|---|---|---|---|
| Sex Group | Total | 65,507 | 826 | 66,333 |
| | Female | 33,818 | 367 | 34,185 |
| | Male | 31,307 | 458 | 31,765 |
| | Non-binary | 6 | | 6 |
| | Refused/Unknown | 376 | 1 | 377 |
| Age Group | Total | 65,507 | 826 | 66,333 |
| | 9 and younger | 3,231 | | 3,231 |
| | 10 to 19 | 7,250 | | 7,250 |
| | 20 to 29 | 14,392 | 1 | 14,393 |
| | 30 to 39 | 11,891 | 8 | 11,899 |
| | 40 to 49 | 10,394 | 19 | 10,413 |
| | 50 to 59 | 8,274 | 52 | 8,326 |
| | 60 to 69 | 5,111 | 132 | 5,243 |
| | 70 to 79 | 2,906 | 189 | 3,095 |
| | 80+ | 1,925 | 425 | 2,350 |
| | Refused/Unknown | 133 | | 133 |
| Race | Total | 65,507 | 826 | 66,333 |
| | AI/AN | 1,373 | 14 | 1,387 |





EXHIBIT ₿
PAGE 3 OF 3

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 25, 2020, I served the foregoing PLAINTIFFS'

RENEWED EMERGENCY MOTION FOR A PRELIMINARY INJUNCTION AND

SUPPORTING MEMORANDUM OF LAW as follows:


Marc Abrams
marc.abrams@doj.state.or.us

OREGON DEPARTMENT OF JUSTICE
Attorney for Defendant


                                        KAEMPF LAW FIRM PC

                                        /s/ John Kaempf_____
                                        John Kaempf
                                        john@kaempflawfirm.com

                                        Attorney for Plaintiffs

KAEMPF LAW FIRM PC
1050 SW Sixth Avenue Suite 1414
Portland, Oregon  97204
Telephone: 503-224-5006